## SCOTT *v.* DONALD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF SOUTH CAROLINA.

No. 410. Argued October 21, 22, 1896. — Decided January 18, 1897.

Where a suit is brought against defendants who claim to act as officers
of a State, and, under color of an unconstitutional statute, commit acts
of wrong and injury to the property of the plaintiff, to recover money or
property in their hands unlawfully taken by them in behalf of the State;
or for compensation for damages; or, in a proper case, for an injunction
to prevent such wrong and injury; or for a *mandamus* in a like case to
enforce the performance of a plain legal duty, purely ministerial; such
suit is not, within the meaning of the Eleventh Amendment to the Con-
stitution, an action against the State.

Circuit Courts of the United States will restrain a state officer from exe-
cuting an unconstitutional statute of the State when to execute it would
be to violate rights and privileges of the complainant that had been guar-

anteed by the Constitution and would do irreparable damage and injury to him.

*In re Tyler*, 149 U. S. 164, affirmed and followed on these points.

It was alleged in the bill, and there was evidence to show, that the complainant intended to import for his own use, from time to time as he might need the same, ales, wines and liquors, the products of other States, of the value exceeding two thousand dollars, which were threatened to be seized by the state constables, claiming to act under the dispensary law; and the agreed statement of facts contained the following statements : "Previous to filing of bill and temporary injunction granted in this case the state constables seized, intended and threatened to seize in future, all intoxicating liquors whatsoever coming into the State from other States and foreign countries, and to carry out in full all the provisions of the dispensary law of January 2, 1895; and the value of the right of importation of ales, wines and other liquors, products of other States and countries, is of the value of two thousand dollars and upwards ; and the difference in the price to the consumer, like the plaintiff, of such liquor bought at the state dispensary of South Carolina and bought out of the State is about fifty to seventy-five per cent in favor of imported liquors." *Held*, that such statements sufficiently concede that the pecuniary value of plaintiff's rights in controversy exceed the value of two thousand dollars; and that it cannot be reasonably claimed that the plaintiff must postpone his application to the Circuit Court, as a court of equity, until his property to an amount exceeding in value two thousand dollars has been actually seized and confiscated, and when the preventive remedy by injunction would be of no avail.

The interest that will allow parties to join in a bill of complaint, or that will enable the court to dispense with the presence of all the parties, when numerous, except a determinate number, is not only an interest in the question, but one in common in the subject-matter of the suit — a community of interest growing out of the nature and condition of the right in dispute.

The decree is also objectionable because it enjoins persons not parties to the suit; as this is not a case where the defendants named represent those not named; and there is not alleged any conspiracy between the parties defendant and other unknown parties; but the acts complained of are tortious, and do not grow out of any common action or agreement between constables and sheriffs of the State of South Carolina.

IN the Circuit Court of the United States for the district of South Carolina, on April 25, 1895, James Donald, a citizen of the United States and of the State of South Carolina, in his own behalf and on behalf of all other persons in the State of South Carolina, as importers for their own use and consumers of the wines, ales and spirituous liquors, the products of other States and foreign countries, filed a bill in equity against J. M. Scott,

M. T. Holley, E. C. Beach and R. M. Gardner, claiming to act as constables of the State of South Carolina, and all other persons whomsoever claiming to act as such constables or as county sheriffs, municipal policemen or executive officers, or in any capacity whatever, under or by virtue of an act of the general assembly of the State of South Carolina, approved January 2, 1895, and generally known as the "dispensary law."

The bill alleged that the defendants named had, on several occasions, seized and carried away packages of wines and liquors belonging to the plaintiff, being products of the States of New York, Maryland and California respectively, and imported by the plaintiff for his own use and consumption, and not intended for sale, barter or exchange by the plaintiff, within the State of South Carolina; and that the defendants claimed, in so doing, to act by virtue of the said act of January 2, 1895, which act was alleged by the plaintiff to be void and unconstitutional, and to furnish no protection to the said defendants in their said acts of trespass and seizure. The bill further alleged that the plaintiff had brought several actions at law against the said defendants in the Circuit Court of the United States for damages caused by the said unlawful acts, which said suits were still pending; that notwithstanding the bringing of said suits the said defendants, and others, constables of the State of South Carolina, have continued to seize and carry away ales, wines and spirituous liquors of the plaintiff and of other persons in the State of South Carolina, imported from other States and foreign countries, and threaten to continue so to do. The bill further alleges that protection of the plaintiff's rights by actions at law involved a multiplicity of suits against said constables, and that by said dispensary act the remedy of replevin was denied to the plaintiff in the courts of South Carolina; and that all said constables were wholly irresponsible financially and unable to respond in damages, and that the plaintiff's constitutional rights, privileges and immunities were now being and are threatened to be continually invaded and grossly violated without redress, and to his irreparable injury. The bill avers that the said

right to import wines and spirituous liquors for his own use and consumption is of the money value of upwards of two thousand dollars, and also that the value of said articles intended to be imported from other States and foreign countries by this plaintiff for his own use and consumption, from time to time, and which are threatened to be seized by said constables, exceeds the sum of two thousand dollars.

The plaintiff prayed for a preliminary and a final injunction, restraining the defendants named, and all other persons claiming to act as constables, and all sheriffs, policemen and other officers, acting or claiming to act under said dispensary act, from seizing and carrying away wines or spirituous liquors imported or brought into the State of South Carolina for his own use or consumption, and from forcibly entering or attempting to search the dwelling house of the plaintiff for any such articles, and from hindering and preventing the plaintiff or any other person from importing, holding, possessing and using the said liquors so imported.

After argument a preliminary injunction was issued on May 9, 1895. The plaintiff had leave to amend his bill by adding the averment that the other said persons on behalf of whom he sues, to wit, importers for their own use and consumers in the State of South Carolina of such ales, wines and spirituous liquors as aforesaid, are too numerous to make parties complainant to the bill, and that some of them are unknown.

Subsequently the defendants pleaded to the jurisdiction of the court, 1st, because the suit is in effect a suit against the State; 2d, because the bill presents no question arising under the Constitution or laws of the United States; 3d, because the bill presents no case upon which the jurisdiction of a court of equity can be founded, there being plain and adequate remedies at law for the injuries complained of; and, 4th, because plaintiff hath not made or stated in his bill a case to entitle him to the relief prayed for. They also answered admitting some and denying others of the allegations of the bill. A replication was filed. Afterwards an agreed statement of facts was filed. Among the facts so stated was the fact that,

in the several actions at law mentioned in the bill, final judgments against the defendants had upon trial been obtained; that notwithstanding said recoveries and notwithstanding the pendency of this bill, other seizures of wines and liquors imported by the plaintiff and by other persons named had been made ; that the plaintiff testified that he intends to import for his own use, from time to time, as he may need the same, ales, wines and liquors, the products of other States, of the value exceeding $2000, which are threatened to be seized by the state constables, claiming to act under the dispensary law ; that the value of the right of importation of ales, wines and other liquors, products of other States and countries, is of the value of $2000 and upwards; that the difference in the price to the consumer, like the plaintiff, of such liquor bought at the state dispensary of South Carolina, and that bought out of the State, is about 50 to 75 per cent in favor of imported liquors ; that the defendants, state constables, who have made the seizures, are all insolvent and financially irresponsible, except Chief Constable Holley, who had not personally made any seizure of plaintiff's liquors, except the first seizure.

The case came on to be heard on the pleadings and the agreed statement of facts, and thereupon the injunction theretofore granted was made perpetual. An assignment of errors was filed and an appeal was allowed to this court. The case was argued here with Nos. 411, 412 and 413, *ante*, 58.

*Mr. William A. Barber*, Attorney General of the State of South Carolina, for appellants.

*Mr. J. P. Kennedy Bryan* for appellee.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Having, in the cases at law, in which the opinion has just been delivered, and for reasons therein given, reached the conclusion that the dispensary law of South Carolina, approved January 2, 1895, is so far unconstitutional and void that this

plaintiff can maintain an action at law against these defendants for' seizing his liquors, we are called upon now to consider whether there is a valid remedy by way of injunction to restrain executive officers from continued and repeated acts of trespass in seizing and carrying away, and confiscating for the use of the State the property of the complainant so imported.

The bill prays for an injunction on the several grounds of irreparable damage ; that the acts complained of prevent the exercise by the complainant of his right to import without molestation lawful commodities, the products of other States ; to avoid multiplicity of suits; and the want of adequate remedies at law.

The objections to proceedings against state officers by injunction are that it is, in effect, proceeding against the State itself, and that it interferes with the official discretion vested in the officers. The answer to such objections is found in a long line of decisions of this court: *Osborn* v. *The United States Bank*, 9 Wheat. 738 ; *Dodge* v. *Woolsey*, 18 How. 331 ; *Board of Liquidation* v. *McComb*, 92 U. S. 531 ; *Cummings* v. *National Bank*, 101 U. S. 153 ; *Memphis & Little Rock Railroad* v. *Railroad Commissioners*, 112 U. S. 609 ; *Virginia Coupon cases*, 114 U. S. 269, 295, 315 ; *Pennoyer* v. *McConnaughy*, 140 U. S. 1 ; *Belknap* v. *Schild*, 161 U. S. 10, 18.

*In re Tyler*, 149 U. S. 164, was a case where the receiver of the South Carolina Railway Company filed a bill in equity in the Circuit Court of the United States against the treasurers and sheriffs, eighteen in number, in the counties through which the railroads in his possession passed, alleging that the treasurers were about to issue tax executions and the sheriffs about to levy and seize thereunder property of the railway company for the taxes for the fiscal year beginning November 1, 1890. The bill alleged that the taxes for that fiscal year were unconstitutional and illegal in part upon various grounds ; that the levy and sale of the road would cause irreparable injury ; that there was no adequate remedy at law ; that a multiplicity of suits would be necessary to protect his rights if he sued at law ; and prayed for an injunction against the issue and levy of the tax warrants in question. After

answer and full hearing, the court issued an injunction re-
straining M. V. Tyler, sheriff of Aiken County, his deputies
and agents, from further intermeddling, interfering with, keep-
ing and holding the personal property distrained upon by him
belonging to the petitioner, as receiver, and ordering that the
said property should be restored to the custody of the receiver.
It is being shown subsequently by affidavits that Tyler refused
to comply with the injunction and continued to hold and
detain said property, the court adjudged him guilty of con-
tempt, imposed a fine upon him, and committed him to the
custody of the marshal of the court until he should pay said
fine or purge himself of his contempt. A petition for a writ
of *habeas corpus* was filed in this court, and, upon the hearing
of the cause, it was mainly argued, on behalf of the petitioner,
that the proceedings in the Circuit Court were substantially
a suit against the State of South Carolina, and that by its
mandatory injunction upon its officers the court divested the
State of its possession.

This court denied the writ, and, speaking through the Chief
Justice, thus expressed the conclusion reached in the previous
cases, many of which were cited in the argument :

"The object of this petition was to protect the property,
but even if it were to be regarded as a plenary bill in equity
properly brought for the purpose of testing the legality of the
tax, we ought to add that, in our judgment, it would not be
obnoxious to the objection of being a suit against the State.
It is unnecessary to retravel the ground so often traversed by
this court in exposition and application of the Eleventh
Amendment. The subject was but recently considered in
*Pennoyer* v. *McConnaughy*, 140 U. S. 1, in which Mr. Justice
Lamar, delivering the opinion of the court, cites and reviews
a large number of cases. The result was correctly stated to be
that where a suit is brought against defendants who claim
to act as officers of a State, and, under color of an uncon-
stitutional statute, commit acts of wrong and injury to the
property of the plaintiff, to recover money or property in
their hands unlawfully taken by them in behalf of the State ;
or for compensation for damages; or, in a proper case, for an

injunction to prevent such wrong and injury; or for a mandamus in a like case to enforce the performance of a plain legal duty, purely ministerial; such suit is not, within the meaning of the amendment, an action against the State.

" And while it is conceded that the principle stated by Chief Justice Marshall in the leading case of *Osborn* v. *Bank of the United States*, 9 Wheat. 738, that 'in all cases where jurisdiction depends on the party, it is the party named in the record,' and that the 'Eleventh Amendment is limited to those suits in which a State is a party to the record,' had been qualified to a certain degree in some of the subsequent decisions of this court; yet it was also rightly declared that the general doctrine there announced, that the Circuit Courts of the United States will restrain a state officer from executing an unconstitutional statute of the State when to execute it would be to violate rights and privileges of the complainant that had been guaranteed by the Constitution and would do irreparable damage and injury to him, has never been departed from."

Suppose it established that the objections just mentioned fail, it is suggested that jurisdiction did not exist in the Circuit Court because the value in controversy did not exceed the sum of two thousand dollars. It is alleged in the bill, and there was evidence to show, that the complainant intends to import for his own use, from time to time as he may need the same, ales, wines and liquors, the products of other States, of the value exceeding two thousand dollars, which are threatened to be seized by the state constables, claiming to act under the dispensary law. And the agreed statement of facts contains the following statements: " Previous to filing of bill and temporary injunction granted in this case the state constables seized, intended and threatened to seize in future, all intoxicating liquors whatsoever coming into the State from other States and foreign countries, and to carry out in full all the provisions of the dispensary law of January 2, 1895; and the value of the right of importation of ales, wines and other liquors, products of other States and countries, is of the value of two thousand dollars and upwards; and the difference in the price to the consumer, like the plaintiff, of such liquor

bought at the state dispensary of South Carolina and bought out of the State is about fifty to seventy-five per cent in favor of imported liquors."

Such statements sufficiently concede that the pecuniary value of plaintiff's rights in controversy exceed the value of two thousand dollars. Nor can it be reasonably claimed that the plaintiff must postpone his application to the Circuit Court, as a court of equity, until his property to an amount exceeding in value two thousand dollars has been actually seized and confiscated, and when the preventive remedy by injunction would be of no avail.

But while we think that the complainant was entitled to an injunction against those defendants who had despoiled him of his property, and who were threatening to continue so to do, we are unable to wholly approve the decree entered in this case.

The theory of the decree is that the plaintiff is one of a class of persons whose rights are infringed and threatened, and that he so represents such class that he may pray an injunction on behalf of all persons that constitute it. It is, indeed, possible that there may be others in like case with the plaintiff, and that such persons may be numerous, but such a state of facts is too conjectural to furnish a safe basis upon which a court of equity ought to grant an injunction. We prefer to accept, in this respect, the views expressed by Mr. Justice Nelson, in the case of *Cutting* v. *Gilbert*, 5 Blatchford, 259, 261. There a bill had been filed by several bankers, as well for themselves as all others in the same interest, against the assessor and collector of a certain tax under the ninety-ninth section of the Internal Revenue Act of June 30, 1864, seeking to restrain the collection of such tax as illegal, and the learned justice disposed of the question in the following language:

"This is a bill of peace to quiet the rights of parties, and to put an end to further litigation. The bill is founded on the idea that all persons in business as brokers, or who are bankers doing business as brokers, charged with the tax in question, have such a unity or joinder of interest in contesting it, that all may join in the bill for that purpose; and that as the

parties are so numerous as to make it inconvenient to join all of them, a determinate number may appear in the name of themselves and for the rest. I have not been able to concur in this view. The interest that will allow parties to join in a bill of complaint, or that will enable the court to dispense with the presence of all the parties, when numerous, except a determinate number, is not only an interest in the question, but one in common in the subject-matter of the suit; such as the case of disputes between the lord of a manor and his tenants; or where several tenants of a manor claim the profits of a fair; or between the tenants of one manor and those of another; or in a suit to settle a general fine to be paid by all the copyhold tenants of a manor, in order to prevent a multiplicity of suits. In all these and the like instances given in the books, there is a community of interest growing out of the nature and condition of the right in dispute; for, although there may not be any privity between the numerous parties, there is a common title out of which the question arises, and which lies at the foundation of the proceedings. . . . In the case before me, the only matter in common among the plaintiffs, or between them and the defendants, is an interest in the question involved, which alone cannot lay a foundation for the joinder of parties. There is scarcely a suit at law, or in equity, which settles a principle or applies a principle to a given state of facts, or in which a general statute is interpreted, that does not involve a question in which other parties are interested, as, for instance, the doctrine of trusts, and the statutes of descents, of frauds, of wills and the like; yet no lawyer would contend that such an interest would justify a joinder of parties as plaintiffs, in a case arising under the law of trusts, or under any of the statutes mentioned. The same may be said of questions arising under the revenue laws, such as the tariff and the excise laws, and which are the subject of litigation in the courts almost daily. Large classes of persons, other than the parties to the suit, are interested in the questions involved and determined. To allow them to be made parties to the suit would confound the established order of judicial proceedings, and lead to endless perplexity and confusion."

Similar views prevailed in the case of *Baker* v. *City of Port-land*, 5 Sawyer, 566, where it was held by District Judge Deady, Mr. Justice Field concurring, that any number of persons who may from time to time be engaged in making street improvements under several and distinct contracts with a city are not therefore a class of persons having a common interest in the subject of street improvements, concerning which any one or more may sue for the whole.

The decree is also objectionable because it enjoins persons not parties to the suit. This is not a case where the defendants named represent those not named. Nor is there alleged any conspiracy between the parties defendant and other unknown parties. The acts complained of are tortious, and do not grow out of any common action or agreement between constables and sheriffs of the State of South Carolina. We have, indeed, a right to presume that such officers, though not named in this suit, will, when advised that certain provisions of the act in question have been pronounced unconstitutional by the court to which the Constitution of the United States refers such questions, voluntarily refrain from enforcing such provisions; but we do not think it comports with well-settled principles of equity procedure to include them in an injunction in a suit in which they were not heard or represented, or to subject them to penalties for contempt in disregarding such an injunction. *Fellows* v. *Fellows*, 4 John. Chan. 25, citing *Iveson* v. *Harris*, 7 Ves. 257.

The decree of the court below should therefore be amended by being restricted to the parties named as plaintiff and defendants in the bill, and this is directed to be done, and it is otherwise

*Affirmed.*

Mr. Justice Brown dissented, for the reason given by him in his dissent in *Scott* v. *Donald, ante,* 102.

Mr. Justice Brewer did not hear the argument and took no part in the decision of this case.