MARSHA K. REARDON *et al.*, Plaintiffs-Appellants, *v.* FORD MOTOR COMPANY, Defendant-Appellee.

(No. 71-209;

Third District—September 8, 1972.

Carl F. Reardon, of Peoria, for appellants.

Robert L. Stern, of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiffs, being three owners of Ford automobiles, filed a complaint at law purportedly on behalf of all owners of Ford and Mercury automobiles of the model years 1965 through 1969 and owners of 1968 and 1969 Thunderbird automobiles. According to the allegations of the plaintiffs these owners would constitute a class of approximately 4,000,-000 individuals located throughout the United States. There was no allegation of physical injury to any of the plaintiffs, but it was alleged that the front wheel suspension systems of all the automobiles in question are defective in that such systems contain a mechanism known as a "lower control arm" which experiences progressive fatigue when subjected to high speed or severe impacts and which could eventually cause front wheel collapse. The plaintiffs demanded a trial by jury and $480,000,000 in compensatory damages and $960,000,000 in punitive damages. The plaintiffs further sought the issuance of a mandatory injunction which would require the defendant to recall and replace each of the allegedly defective lower control arms. This initial complaint filed by the plaintiffs contained four counts alleging strict liability in tort, negligence, warranty and deceit.

The defendant moved the trial court to dismiss the entire complaint on the ground that the suit was not a proper class action under the law of our State. The defendant moved specifically to strike Counts I and II of the complaint which alleged strict liability in tort and negligence on the ground that plaintiffs had not alleged that they had suffered the requisite injury to person or property which is necessary to sustain a cause of action under these theories. The motion of the defendant also moved that the prayers for injunctive relief be stricken since the plaintiffs have an adequate remedy at law in that damages could be awarded to compensate the plaintiffs for any injury which they may have suffered. The trial court granted the defendant's motion and the complaint was dismissed.

The plaintiffs next sought an order vacating the order of dismissal and asked for leave to file an amended complaint. The proposed amended complaint altered to some extent the legal theories upon which the plaintiffs desired to proceed. They abandoned their theories of strict liability, negligence and warranty and placed greater emphasis on their prayers for equitable relief and damages. Their prayer of relief demanded *inter alia* that the defendant advise the public of the existence of the allegedly defective vehicles and that it replace at its expense the control arms, and that further a "common fund" of $500,000,000 be set aside as the amount initially charged by Ford for the designing and manufacturing of the control arms in question. This common fund

was to serve the purposes of assuring that the defendant would comply with any orders of the court and in the alternative was to be made available to the plaintiffs in the form of monetary damages for losses which they had allegedly suffered.

The trial court denied the plaintiffs' motion to vacate the order of dismissal and the request for leave to file the amended complaint. This appeal is taken from these orders and the issues presented for review are (1) whether the trial judge properly determined that the instant case was inappropriately brought as a class action under Illinois law, and (2) whether the trial judge was correct in his denial of the plaintiffs' motion to file an amended complaint.

■■ It is apparent that the plaintiffs are attempting to maintain a class action on the basis that a great number of individuals purchased Ford, Mercury and Thunderbird automobiles between the years of 1965 and 1969 and that further all of these purchasers have a common or similar difficulty with a mechanical component of these vehicles which would entitle the owners to some legal satisfaction from the defendant. The mere fact that there are numerous aggrieved parties all of whom have similar claims against a defendant is not alone sufficient to support a class action in our state. See *Fetherston v. National Republic Bancorp.,* 280 Ill.App. 151; *Michelsen v. Penney,* 10 F.Supp. 537.

■■ Representation by a few on behalf of many as a device to conclude the rights of the absent parties must be regarded by the courts as conduct requiring close and vigilant scrutiny, and as a technique which should be resorted to only when complete justice to all interested parties will follow from its application. Each situation must be carefully analyzed and considered from the viewpoint of the entire class, and general definitions as to the right of the named party to bring the action must give way to particular circumstances. Where the right to proceed is doubtful, permission will be generally refused. See Fox, Representative Actions and Proceedings, 1954 U. Ill. L. Forum, page 97.

■■ It is to be noted that the matter of "class or representative actions" in Illinois is governed entirely by case law so we must examine and analyze the situation presented in the instant case in the light of the authoritative decisions rendered by the reviewing courts of our State.

In *Newberry Library v. Board of Education,* 387 Ill. 85, 55 N.E.2d 147, our Supreme Court stated:

"* * * This class suit is recognized as an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject matter of the litigation is so great that it is impracticable to join them as parties.

* * *

To constitute a class suit in which the court acquires jurisdiction over every member of the class, and the decree therein binds members of that class not present, the subject matter of the litigation must be a common or joint interest, not only in the question involved, but likewise interest in common in the remedy and subject matter of the suit itself (*Scott v. Donald*, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648), or the relationship between the parties present and those who are absent must be such as legally to entitle the former to stand in judgment for the latter. *Scott v. Donald*, 167 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648; *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; *Christopher v. Brusselback;* 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388; *Smith v. Swormstedt*, 16 How. 288, 14 L.Ed. 942."

In the *Newberry* case the plaintiff, a holder of certain school bonds, brought suit to collect on an overdue interest coupon. The defendant school board argued that a class action had previously been filed by another bondholder and this prior class action precluded the plaintiff's separate suit. Our Supreme Court held that the earlier pending action was not a proper class action and therefore the plaintiff's suit was not barred. In so holding the court emphasized that the various bonds had been purchased through entirely separate and distinct albeit similar transactions. However, the fact that there had been purchases of identical but separate items from the defendant was held not sufficient to sustain a class action. Each purchaser was regarded as having a separate claim for money from the defendant which could be satisfied out of its general assets.

In *Newberry* the court made the following observation:

"The requirements of a class suit, in matters where the transactions are individual, separate and distinct from each other, are more than a common right of recovery." *Newberry Library v. Board of Education, supra.*

The court noted in *Newberry* that if the class action suit commenced by one Delevitt was permitted then any order, decree or judgment entered thereon would be binding upon all members of the alleged class, being those who purchased identical bonds and who had failed to receive payment of an interest coupon. The court took cognizance of the fact that if a defense of payment, settlement of claim or any other defense was made and found good to Delevitt's claim then all members of the class he was attempting to create would likewise be bound by an order of dismissal and any course of action they might have had would be disposed of without any of them having had an opportunity to be heard.

Before making an analyzation of the situation as it exists in the instant case we first direct our attention to another Illinois case on class action which is *Peoples Store of Roseland v. McKibbin*, 379 Ill. 148, 39 N.E.2d 995. In *McKibbin* the plaintiffs, being sellers of food products to institutions such as hospitals and orphanages, sued to enjoin the collection by the state of a retailers occupation tax on these sales. Suit was brought on behalf of all other firms and individuals in the State who were engaged in selling the same type of merchandise to similar institutions. Our Supreme Court held that the trial court had erred in permitting the suit to be prosecuted as a class action and stated as follows:

"In those cases where class litigation has been sustained, all members of the class are found to have a common interest in the questions involved and the results obtained. In the instant cases all retailers of the State engaged in selling food supplies to institutions of the kind and character to which plaintiffs sold have an interest in having such sales exempted from the tax but the common interest stops there. *A decision sustaining their view that no tax is due on such sales does not create any fund from which reimbursement can be made, neither does it establish the existence of a right of recovery in every vendor.* Each must make proof as required by section 6 as amended, and *in doing so he resorts to his own sales which are wholly independent and unrelated to the sales made by others engaged in the same business and selling to similar institutions."* (Emphasis added.)

■■ The *Newberry* case established that a class action may be brought only where there is a "common interest" among the members of the class in both "the question involved" and "the remedy" and "the subject matter of the suit"; or where the relationship among the members of the class is such as "legally to entitle" one member to "stand in judgment" for the others. In *McKibbin* we find that a further ingredient must be present if a class action is to stand and that additional requisite is the necessity for the existence of a common fund from which reimbursement to members of a class could be made should the plaintiffs prevail.

■■ Applying the principles set forth in *Newberry* and *McKibbin* to the situation which we have in the instant case we fail to find in existence the requisites necessary to sustain a class action. Where is the community of interest in the subject matter of the litigation and in the remedy sought? We fail to see that the fact that 4,000,000 vehicles presently owned by presumably approximately the same number of individuals, each of which have a similar defect, by and of itself creates the requisite of a community of interest in the subject matter and remedy sought. We grant and acknowledge that this multitude of owners may

well have common questions of law or fact. However, common questions of law or fact are alone not sufficient to sustain a class action. There was no public offering made by the defendant of 4,000,000 vehicles for a flat price such as one would find when purchasing corporate stock or bonds. Instead, 4,000,000 sales were individually made, throughout every one of our fifty States. Advertising, selling techniques, "trade in allowances" and representations varied between the thousands of franchised Ford products automobile dealers and the hundreds or even thousands of used car dealers. The sale of 4,000,000 vehicles under such conditions cannot be compared to class action suits which challenge the validity of a statute, the by-laws of a corporation, or seek the disposition of specific property held in trust or otherwise for a specific purpose and for a specific group.

Not only do we fail to find a community of interest in the subject matter but there is a like failure of a community of interest in the remedy sought. Three individuals all from the State of Illinois attempt to "stand in judgment" for approximately 4,000,000 other individuals located in every state in the union. Procedural questions, evidentiary questions, and various defenses such as the statute of limitations vary from State to State. We do not believe that three plaintiffs all from the same State should be permitted to "stand in judgment" for 4,000,000 other individuals who may well desire to seek their own redress against the defendant. Each transaction which resulted in the purchase of a vehicle will have its own unique history which obviously should require separate evidence from each purchaser, since in the instant case the plaintiffs' basis for recovery is predicated upon the theories of strict liability, negligence, warranty, deceit, fraud, breach of a "fiduciary position of implied trust" and other equitable remedies.

■■■ Further it must be noted that there is a complete absence of a "common fund" as required by the case of *McKibben*. The plaintiffs, realizing that under the state of facts with which they were confronted, made an attempt to create such a common fund when in their proposed amended complaint they included among their prayers for relief that a "common fund" in the sum of $500,000,000 be set aside as the amount initially charged by the defendant for the designing and manufacturing of the control arms in question. It is significant to note that the plaintiffs did not allege that there was a common fund in existence nor could they have done so since such was not the case. Further there are no allegations that the defendant segregates the amounts received from the sale of each vehicle according to individual mechanical components of the vehicles or maintains any separate fund of any kind. We do not

deem it to be mandatory that there be *in esse* a common fund in every instance if a class action is to be sustained for we are aware of the many cases where such an action was permitted in the absence of such a fund. Without recounting the cases it is suffice to say that none of them had factual situations that were in any way similar or comparable to that which is present in the instant case. For the plaintiffs to prevail in the case now before us we hold the existence of a common fund to be a necessary requisite. No such fund is present nor can one be created in accordance with the plaintiffs' prayer for relief in their proposed amended complaint. To create such a fund a portion of the defendant corporation's general assets would have to be set aside. To grant such a prayer of relief would effectively destroy the concept of a "common fund" requirement since one could be created at will in all tort and contract actions. In the present case, as in *McKibbin* and *Newberry,* any "common fund" would have to come from general funds and this is not the intent or tenor of the case law in Illinois which governs class or representative actions.

The plaintiffs cite the cases of *Harrison Sheet Steel Co. v. Lyons,* 15 Ill.2d 532, 155 N.E.2d 595, and *Smyth v. Kaspar American State Bank,* 9 Ill.2d 27, 136 N.E.2d 796, as having undermined the requirements for a class action as set forth in *Newberry* and *McKibbin.* We fail to see that the cases cited by the plaintiffs present any departure from the principles which we have previously set forth as being determinative of the validity or invalidity of a class action. It should further be noted that in both the *Harrison* and *Smyth* cases our Supreme Court found that a common fund was in fact present. In *Harrison* the *McKibbin* case was distinguished, not diluted or overruled, while in *Smyth* the *Newberry* case was cited with approval. In the instant case each member of the alleged class may have a claim against the defendant and if such is the case these claims can and should be prosecuted individually and if successful can be satisfied out of any assets of the defendant. Our analysis of allegations contained in the plaintiffs' first complaint, as well as those set forth in the proposed amended complaint, lead us to the conclusion that the trial judge properly determined that the instant case was inappropriately brought as a class under the law of Illinois.

■■ We are further of the opinion that the trial court did not abuse its discretion in denying the plaintiffs' request for leave to file the amended complaint. The refusal to permit the filing of an amended complaint is not an abuse of discretion where further pleadings would be of no avail to cure defects. (See *Chesterfield Sewer & Water Inc. v. Citizens Insurance Co.,* 57 Ill.App.2d 90, 207 N.E.2d 84.) As set forth

in this opinion, the proposed amended complaint did not cure defects in the first complaint so we cannot find that the trial court abused its discretion in refusing to permit the filing of the amended complaint.

For the reasons set forth the judgment of the circuit court of Tazewell County dismissing the complaint and denying leave to file an amended complaint is hereby affirmed.

Judgment affirmed.

STOUDER, P. J., and DIXON, J., concur.