ANN SPIREK *et al.*, Plaintiffs-Appellees, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (1st Division)  Nos. 77-915, 77-1695 cons.

Opinion filed September 25, 1978.

John A. Hutchings, James J. Hoffnagle, and Alfred C. Tisdahl, Jr., all of Chicago (Taylor, Miller, Magner, Sprowl & Hutchings, of counsel), for appellant.

Raymond F. Simon, Joseph A. Spitalli, and Richard Lee Stavins, all of Chicago (Milton M. Blumenthal, of counsel), for appellees.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This is a class action against State Farm Mutual Automobile Insurance Company by two named plaintiffs who are insureds of State Farm. The action is brought individually and in a representative capacity on behalf of all other insureds of State Farm who received or were entitled to receive medical payments under their State Farm automobile insurance policy and who were required, as a condition to receiving their medical payments, to execute subrogation receipts.

Defendant moved to dismiss the complaint, alleging that it failed to state a cause of action as well as a proper class action. The chancellor denied State Farm's motion, ruling that the complaint stated a valid cause of action as well as class action. The court certified the class as all insureds of State Farm who had signed similar policies wherever situated, whether within or without the State of Illinois. The chancellor also entered a protective order, operative nationally, which precluded State Farm from destroying its records relating to the payment of medical expenses to insureds dating back to 1969. Defendant filed an interlocutory appeal from that order under Supreme Court Rule 307 (58 Ill. 2d R. 307), contending that the protective order constituted an injunction and should not have been national in scope, but limited to Illinois residents. That appeal was docketed in this court as case number 77-915. Subsequently, the trial court certified three questions of law to be resolved by this court, and leave to appeal was granted pursuant to Supreme Court Rule 308 (58 Ill. 2d R. 308). That appeal was docketed as number 77-1695.

The questions certified by the trial court are: (1) Does the contract of insurance in this case give State Farm the right to subrogate as to payments made to its insureds under Division 1 of Coverage C, (2) is this case properly certified as a class action, and (3) does this court have the power in the instant case to include nonresidents of the State of Illinois as residents of the plaintiff class? The issue presented in the consolidated case is whether the protective order entered against State Farm was proper.

Russell Spirek, plaintiff Ann Spirek's husband, purchased an automobile policy, number 2955 745-B17-13B, from State Farm Mutual Automobile Insurance Company which was in effect on September 7, 1974. Ann Spirek was involved in an automobile accident on that date and incurred medical expenses as a result thereof in the amount of $182.20. She applied to State Farm for medical payment benefits on or about December 30, 1975, and subsequently received them. In conjunction with such payments, she executed a "Subrogation Receipt" dated February 9, 1976, stating:

"Received of:

State Farm Mutual Automobile Insurance Company the sum of One Hundred Eighty-Two and 20/100 ($182.20) in full settlement and final discharge of all claims and liability under the medical payment coverages of Policy No. 2955 745 B17 13B * * * and for the consideration aforesaid and to the extent of said payment the undersigned further subrogates to said company all rights which the undersigned may have against any person or persons arising out of the loss mentioned above, and for the enforcement of such rights said insurer is hereby authorized to take any action which may be necessary either in law or in equity in its own name or that of the undersigned, and to likewise compromise or settle and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned with the same force and effect as if the undersigned had executed or endorsed them.

It is further warranted that no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release given by the undersigned without the written consent of the said insurer, and the undersigned covenants and agrees to cooperate fully with said insurer in the prosecution of such claims and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify if the insurer deems such to be necessary.
* * *

Mrs. Ann Spirek /s/"

Plaintiff, Delores Skrip, purchased automobile policy number 4901 832-D17-13 from State Farm which was in effect on May 13, 1971. She was involved in an automobile accident on that date. She applied to State Farm for medical payments on or about October 27, 1975. State Farm's draft for confirmed medical expenses was tendered to her. Such tender was subject to subrogation in favor of State Farm as allegedly provided by the policy. Dolores Skrip rejected the tender.

Russell and Ann Spirek and Dolores Skrip were Illinois residents at the time their policies were issued. They both were insured under a State Farm policy, form 9536.9. The relevant provisions read:

"STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
Bloomington, Illinois
A Mutual Insurance Company
Herein Called the Company
Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in

reliance upon the statements in the declarations and subject to all of the terms of this policy.

Note: The words in bold face italic type are defined Under Definitions within each Section.

Section 1—Liability and Medical Payments
Insuring Agreements
* * *

COVERAGE C—MEDICAL PAYMENTS

*Division 1.* To pay reasonable *medical expenses* incurred for services furnished within one year from the date of accident to or for the first *person* named in the declarations and, while *residents* of his household, his spouse and any relative of either who sustains *bodily injury,* caused by accident, while *occupying* the *owned motor vehicle* if such vehicle is being used by an *insured:* provided that no such payment shall be made unless the *person* to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for *damages* entered in his favor, against any *insured* because of *bodily injury* arising out of any accident to which coverage A applies.

*Division 3.* To pay $1,000 in the event of the death of the first *person* named in the declarations, or his spouse if a *resident* of the same household, which shall result directly and independently of all other causes from *bodily injury* caused by accident and sustained by such *person* or spouse while *occupying* or through being struck by a motor vehicle or trailer, if death occurs within 90 days of the accident. If more than one policy issued by the company applies to this division, the total limit of the company's liability under all such policies shall not exceed the amount applicable under one policy.
* * *

POLICY CONDITIONS
(The Policy Conditions Apply to All Coverages Unless Otherwise Noted)
* * *

4. *Subrogation.* Upon payment under this policy, except under coverages C, M, S and T, the company shall be subrogated to all the insured's rights of recovery therefor and the *insured* shall do whatever is necessary to secure such rights and do nothing to prejudice them.

Upon payment under coverages C and M of this policy the

company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured *person* or anyone receiving such payment may have against any *person* or organization and such *person* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such *person* shall do nothing after loss to prejudice such rights.

5. *Trust Agreement—Coverages C, M and U.* In the event of payment to any person under coverage C, M or U:

> (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such *person* against any *person* or organization legally responsible for the *bodily injury* because of which such payment is made;
>
> (b) such *person* shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other *person* or organization because of the damages which are the subject of claim made under the coverages;
>
> (c) such *person* shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
>
> (d) if requested in writing by the company, such *person* shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other *person* or organization, such action to be taken in the name of such *person;* in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;
>
> (e) such *person* shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such *person* and the company established by this provision." (Emphasis added.)

Plaintiffs filed their complaint on April 14, 1976. In count I, plaintiff Spirek, who was paid her medical expenses by State Farm and executed a "subrogation receipt" sued: (1) for a declaration that State Farm had no right of subrogation for such medical payments paid to her or other resident relatives of insureds, (2) for a declaration that the subrogation receipts signed by her and others were void, (3) for an injunction prohibiting State Farm from asserting any alleged rights of subrogation, (4) to have State Farm create and segregate a fund equal to the amount State Farm recovered and collected from others in the last 10 years by reason of its exercise of its alleged subrogation rights and pay said fund to

a receiver appointed by the court, and (5) for a judgment in favor of the plaintiff and others like her for costs, expenses and attorneys fees to be paid out of such fund.

In count II of the complaint plaintiff Skrip, who was tendered her medical expenses on condition that she sign the "subrogation receipt" and who refused the tender, sues as an insured for substantially the same relief as contained in count I absent the declaration that such "subrogation receipts" be declared void.

State Farm filed motions to dismiss for failure to state a cause of action and for failure to state a valid class action, which were denied. The plaintiffs filed interrogatories requesting information relating to contracts of insurance and claims made thereunder which had no connection with Illinois, and the defendant filed its objections. The plaintiffs then filed two motions. One was for a hearing on defendant's objections to interrogatories. The other was for an injunction prohibiting destruction of certain records by State Farm.

The trial court, in its order of May 24, 1977, overruled State Farm's objections to the geographic scope of the inquiry and enjoined State Farm from destroying records described therein. In its order of September 20, 1977, the trial court certified the class to consist of "all insureds of State Farm Mutual Automobile Insurance Company, wherever situated, whether within or without the State of Illinois, who were insured under policies of insurance the same or substantially the same as the policies of the named plaintiffs, containing substantially the same provisions as Division 1 of Coverage C and policy conditions 4 and 5 of the policies of the named plaintiffs, who received or who are entitled to receive medical pay from State Farm Mutual Automobile Insurance Company under Division 1 of Coverage C and as to whom and with respect to which State Farm Automobile Insurance Company asserted and/or asserts a right of subrogation." The trial court then certified the remaining three questions of law for review.

■■ The first issue is whether, as a matter of law, State Farm, under its policy or the common law, is possessed of subrogation rights and entitled to keep the sums of money it recovered by subrogation. By filing its motion to dismiss the complaint, defendant has admitted the well-pleaded allegations of the complaint (*Wilbur Waggoner Equipment Rental & Excavating Co. v. Johnson* (1975), 33 Ill. App. 3d 358, 361, 342 N.E.2d 266, 269). State Farm admits that the plaintiffs and the members of the class they represent are insureds of State Farm; that each of their policies of insurance contains a medical payment coverage provision couched in language substantially identical to that contained in Division 1, Coverage C of the instant policy; that each plaintiff and member of the

class has recovered or is entitled to receive medical pay in an undisputed amount; that State Farm insisted that each insured execute an alleged subrogation receipt as a condition to receiving the medical payments to which each plaintiff was admittedly entitled; and that the amount due and owing on each medical pay claim is liquidated and readily determined by inspection of defendant's corporate books and records.

State Farm first contends that its insurance policies explicitly give it a right of subrogation for medical payments made or tendered by it to the plaintiffs and all members of the class they seek to represent. The relevant policy language was set out earlier. Coverage C-Medical Payments, is divided into three divisions providing benefits under various circumstances. Division 1 basically provides for payment of reasonable medical expenses to the first person named in the declaration—the insured—and his resident relatives, for injuries received in any motor vehicle accident while occupying the owned motor vehicle or through being struck by any motor vehicle. Division 2 provides similar benefits to any *other* person who is injured while occupying the owned motor vehicle if such vehicle is being used by an insured. It contains the proviso that medical payments made thereunder shall be applied towards any settlement or judgment paid under the liability section of the same policy. Division 3 merely provides for a death benefit.

The medical payments coverage is set out in separate divisions to show who is entitled to its benefits. The first person named in the declarations and his spouse are entitled to payment of a death benefit and medical expenses arising out of any motor vehicle accident under Divisions 1 and 3.

The resident relatives of the first person named in the declaration are entitled to payment of medical expenses arising out of any motor vehicle accident under Division 1. Any other person is entitled under Division 2 to payment of medical expenses arising out of a motor vehicle accident while occupying the owned motor vehicle if such vehicle is being used by an insured, provided the amounts paid are deducted from any judgment or settlement of a liability claim against an insured under the same policy.

We read Division 1 of Coverage C of the insuring portion of the policy as unconditionally obligating State Farm to make medical payments to its insureds and their resident relatives. In fact, this is what the insured has contracted for and paid premiums to receive. Division 1 by its clearly stated language expresses State Farm's unequivocal intent to make medical payments to its insureds. It requires State Farm:

> "To pay reasonable medical expenses incurred for services furnished within one year from the date of accident to or for the first person named in the declaration and, while residents of his

household, his spouse and any relatives of either who sustain bodily injury caused by accident, while occupying the owned motor vehicle * * *."

On the other hand, Division 2 of Coverage C conditionally obligates State Farm to make medical payments to claimants other than insureds and their resident relatives. Division 2 requires State Farm:

"To pay reasonable medical expenses incurred for services furnished within one year from the date of accident to or for *any other person* who sustains bodily injury caused by accident, while occupying the owned motor vehicle if such vehicle is being used by an insured; *provided that no such payment shall be made unless the person to or for whom such payment is made shall have executed a written agreement that the amount of such payment shall be applied toward the settlement of any claim, or the satisfaction of any judgment for damages entered in his favor against any insured * * *."* (Emphasis added.)

The payment of medical benefits to an insured's nonrelative passengers is made expressly conditional.

This express distinction between unconditional coverage for insureds and their resident relatives, and a nonrelative passenger's conditional coverage is further highlighted by the first part of paragraph four of the Policy Conditions, which provides: "Upon payment under this policy *except under Coverage C* * * * the company shall be subrogated to all of the insured's rights of recovery." (Emphasis added.) State Farm thereby excludes its insureds from the operation and application of the subrogation provisions of the remainder of the policy.

This distinction in treatment between insureds and other claimants is also followed in the second part of paragraph four of the Policy Conditions, where it is provided that claimants other than insureds and their resident relatives are required to subrogate medical payments. That portion of the policy provides:

"Upon payment under Coverage C and M of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the *injured person* or anyone receiving such payment may have against any person or organization and such person shall do whatever else is necessary to secure such rights." (Emphasis added.)

■■ There appears to be a conscious purpose, on the part of the drafter State Farm, in having the subrogation provisions of the policy complement the insuring portions of the policy so as to provide that there would be no subrogation for medical payments to insureds and their

resident relatives. This is clear from the express language of the first part of paragraph four of the policy conditions. In addition, the exclusion of medical payments from any requirement of subrogation is in complete harmony with Division 1 of the insuring coverage portion of the policy which provides for medical payments to be made to the insured, as opposed to other persons without imposing the condition of executing a subrogation receipt. In fact, in reviewing the policy as a whole, nowhere is a subrogation receipt required to be executed by an insured or an insured's resident relative as a condition for medical payments. It is only the person other than an insured who is required to execute such in order to obtain medical pay. Therefore, we find that State Farm's policy fails to reserve a right of subrogation to the company in relation to medical payments made to insureds and their resident relatives.

The law of Illinois is clear that a medical subrogation clause in an insurance policy is valid and enforceable. (*Bernardini v. Home & Automobile Insurance Co.* (1965), 64 Ill. App. 2d 465, 212 N.E.2d 499; *Damhesel v. Hardware Dealers Mutual Fire Insurance Co.* (1965), 60 Ill. App. 2d 279, 209 N.E.2d 876.) But, while it is true that subrogation clauses are generally enforceable, common law concepts of subrogation cannot be employed to create rights of subrogation where the insurance policy provides otherwise. As stated in Couch on Insurance:

> "Where the right of an insurer to subrogation is expressly provided for in the policy, its rights must be measured by, and depend solely on, the terms of such provisions." (16 Couch on Insurance §61:23, at 254 (2d ed. 1966).)

(See also 6A Appelman, Insurance Law and Practice §4052, at 129 (1972).) State Farm's policy provides for such subrogation only for those injured *other than* the named insured. To hold otherwise would require this court to find an unwarranted ambiguity within the policy itself. But even such ambiguity would be construed more strictly against the drafter State Farm and more liberally in favor of its insureds. (*Econo Lease, Inc. v. Noffsinger* (1975), 30 Ill. App. 3d 339, 332 N.E.2d 470; *Home & Automobile Insurance Co. v. Scharli* (1973), 10 Ill. App. 3d 133, 293 N.E.2d 914.) Accordingly, we find that the contract of insurance in the instant case fails to give State Farm the right of subrogation as to payments made to its insureds under Division 1 of Coverage C.

The second issue is whether the circuit court properly certified the case as a class action. Plaintiffs' complaint must be measured in light of the recently enacted section 57.2 of the Civil Practice Act (Pub. Act 80-809). Section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2) sets forth the prerequisite for the maintenance of a class action. It provides:

"(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative party will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." Ill. Rev. Stat. 1977, ch. 110, par. 57.2(a).

As to the first requirement, State Farm does not contest the fact that the class is so numerous as to make joinder impracticable.

■■ The second requirement of the new statute ends numerous controversies under Illinois' prior common law approach to the class action. Among such requirements was the earlier common fund doctrine. (*Peoples Stove v. McKibbin* (1942), 379 Ill. 148, 154, 39 N.E.2d 995, 998; *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 344, 287 N.E.2d 519, 524.) Although already determined to be unnecessary by this court (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 802, 305 N.E.2d 236, 250, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65), the new statute makes it clear that the "decisional law on the question of a common fund is superseded * * *." *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 340, 371 N.E.2d 634, 644.

■■ Similarly, the requirement of a community of interest in both the subject matter and the remedy (*Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598; *Smyth v. Kasper American State Bank* (1956), 9 Ill. 2d 27, 44, 136 N.E.2d 796, 805; *Peoples Stove v. McKibbin* (1942), 379 Ill. 148, 153-54, 39 N.E.2d 995, 998), has been modified and simplified. If " '[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members' " the class action may be maintained. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337, 371 N.E.2d 634, 643.) Despite State Farm's contentions to the contrary, the new statute does away with a large body of decisional law which viewed the communality of interests in stricter terms. The trial court found that plaintiffs' complaint is predicated upon a series of essentially identical transactions by thousands of insureds which were founded upon and arose out of identical contract language in policy form 9536.9 prepared by State Farm. The fact that each separate contract was issued to numerous insureds after different contacts is irrelevant for purposes of the

requirement. This fact is exemplified by the cases holding that a class action need not be predicated upon one single transaction but may arise out of a long series of transactions based upon similar acts or documents. *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431; *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65; *Moseid v. McDonough* (1968), 103 Ill. App. 2d 23, 243 N.E.2d 394.

State Farm's argument that the negotiations which may have occurred in collecting subrogation for medical payments involved separate and dissimilar transactions is without merit. The two named plaintiffs represent the two possible alternatives under the given facts: Either insureds signed the "subrogation receipts" as requested, and collected medical benefits, or refused and did not receive such payments. Regardless of the actual transactions, the result was one of the above and was allegedly predicated upon the same contractual language present in all automobile insurance policies issued by State Farm.

> "[T]he hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action. Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action." *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598.

Because the question of contract interpretation upon which this action is based is a question of law common to all members of the designated class, and because the differences as to facts among insureds are not likely to be great, a common question of law clearly predominates as to Illinois residents.

As to members of the designated class residing elsewhere, however, there are other factors which must be considered before reaching such a conclusion. These will be considered under the last question certified to us by the circuit court, whether an Illinois court has the power to include nonresidents of Illinois in a class action.

The third requirement under the statute is that the representative party will fairly and adequately protect the interest of the class. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2(a)(3).) *Eisen v. Carlisle & Jacquelin* (2d Cir. 1968), 391 F.2d 555, defines adequate representation in terms of the parallel provisions found in Federal Rules of Civil Procedure 23 (Fed. R. Civ. P. 23(a)(4)).

> "[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that the plaintiff has interests

antagonistic to those of the remainder of the class. See *Hansberry v. Lee,* 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940)." (391 F.2d 555, 562.)

Following examination of the record we find that plaintiffs' interests are not antithetical to those of other members of the class, but are the same. This certainly does not appear to be a collusive or friendly action. As far as we can determine, representation by the plaintiff will afford protection to other members of the class who must be afforded due process (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643), although the ability of the plaintiffs to represent the interests of nonresidents of Illinois gives rise to separate problems, which will be considered later.

The final determination under section 57.2 is that the class action be an appropriate method for the fair and efficient adjudication of the controversy. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2(a)(4).) State Farm has not contended that this requirement is not present in the instant case. Therefore, we conclude that this class action would best serve the "economies of time, effort and expense and promote the uniformity of decision and accomplish the other ends of equity and justice sought to be attained in these actions." Forde, *Illinois' New Class Action Statutes,* 59 Chicago Bar Rec. 120, 125 (1977).

■■ The third issue revolves around the trial judge's certification of the class to include all insureds, *wherever located,* who purchased similar automobile insurance policies from State Farm. Although other courts have allowed such "national class actions" to be initiated in Illinois courts, they have done so without any explicit discussion of the jurisdictional problems presented here. (*Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 365 N.E.2d 638; *Kimbrough v. Parker* (1951), 344 Ill. App. 483, 101 N.E.2d 617.) In the instant case, two Illinois residents claim to represent all State Farm policy holders throughout the United States who have made defined medical payment claims. A substantial number of such other persons are not residents of Illinois, their insurance contracts were executed in States other than Illinois, and they may have had no contact with this State sufficient to confer jurisdiction on its courts. It is undisputed that the court has jurisdiction over the defendant, but that does not in itself empower it to render a binding *in personam* judgment over persons not before the court. There is also no dispute that out-of-State residents could appear and subject themselves to the jurisdiction of Illinois courts. However, we find it beyond this court's authority, consistent with due process, to force them to do so.

"The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed in

every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as mere abuse." *Pennoyer v. Neff* (1877), 95 U.S. 714, 720, 24 L. Ed. 565, 568.

"[N]o State can exercise direct jurisdiction and authority over persons or property without its territory. * * * The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others." 95 U.S. 714, 722, 24 L. Ed. 565, 568.

"Since the adoption of the 14th Amendment to the Federal Constitution, the validity of such judgments may be directly questioned, and their enforcement in the State resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction, do not constitute due process of law." 95 U.S. 714, 733. 24 L. Ed. 565, 572.

Although the ability of a State to subject nonresidents to its jurisdiction with or without compelling their presence has increased since the decision in *Pennoyer,* the basic premise of territorial limits remains in the concept of "minimum contacts" espoused in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154. The due process clause still "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has not contacts, ties, or relations." 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160.

The problem inherent in joining out-of-State plaintiffs was discussed in *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519. In that case, three individuals, all from the State of Illinois, attempted to "stand in judgment" for approximately 4,000,000 other individuals located in every State in the union. The court found that procedural questions, evidentiary questions, and various defenses as well as the statute of limitations varied from State to State. Therefore, it rejected the idea that three Illinois plaintiffs should be permitted to stand in judgment for 4,000,000 other individuals who might well desire to seek their own redress against the defendant. 7 Ill. App. 3d 338, 344, 287 N.E.2d 519, 524.

The due process problem is inextricably related to the problem of full faith and credit. That problem has two aspects. First, is that this court, if it had jurisdiction and followed appropriate conflict of laws rules, would have to apply the laws of other States to the transactions of their residents within their borders. *John Hancock Mutual Life Insurance Co. v. Yates* (1936), 299 U.S. 178, 81 L. Ed. 106, 57 S. Ct. 129; *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.

Accordingly, because the plaintiffs in the case at hand come from numerous other States, numerous other States' laws would have to be

applied. Thus, as to nonresident members of the proposed class, the question of law which is the heart of this action would not be in common, and would not predominate, as required by section 57.2(2) of the Civil Practice Act.

Likewise, the need for plaintiff's counsel to argue the law of numerous other States would make it impractical for them to adequately represent all members of the proposed class.

The second due process ramification of the full faith and credit doctrine is that the determination of this court is not binding on persons beyond its jurisdiction. (*Christopher v. Brusselback* (1938), 302 U.S. 500, 82 L. Ed. 388, 58 S. Ct. 350; *Bigelow v. Old Dominion Copper Mining & Smelting Co.* (1912), 225 U.S. 111, 56 L. Ed. 1009, 32 S. Ct. 641.) Thus any judgment rendered in an Illinois court would be subject to relitigation when enforcement was sought in a sister State's courts.

■■ We find therefore that there is reason to doubt the jurisdiction of an Illinois court to join as plaintiffs in a class action persons residing in numerous other States, that such joinder would cause the class action to fail to meet two of the requirements of section 57.2 of the Civil Practice Act, and that the practical utility of any judgment on such a class action outside Illinois would be minimal. Furthermore, by thus limiting the class to residents of Illinois, the Illinois law of limitations would be applied. For these reasons, we find, that, whereas a class consisting solely of Illinois plaintiffs would be proper, a class consisting of all persons wherever located in the United States would not.

Accordingly, we conclude that the contracts of insurance involved in this case do not give State Farm the right to subrogate as to payments made to its insureds under Division 1 of Coverage C and that the cause before us has been properly certified as a class action. We further conclude that nonresidents of the State of Illinois should not be included as members of the plaintiff class and the class here involved is accordingly limited to policyholders of State Farm residing within the State of Illinois. Upon this basis the orders entered by the trial court on May 24, 1977, and September 20, 1977, regarding composition of the class herein and records of State Farm, are modified so as to limit the application of said orders to policyholders of State Farm residing within the State of Illinois, and as to records pertaining to these policies. As thus modified said orders are affirmed and the cause remanded to the trial court for further proceedings in accordance with the views expressed.

Modified in part; affirmed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.