Harold Sullivan, Plaintiff-Appellee, v. La Salle Construction Co., an Illinois Corporation, Asbestos Wood Manufacturing Co., an Illinois Corporation, and Johns Manville Dutch Brands Products Corp., a Corporation, Defendants-Appellants.

Gen. Nos. 49,584, 50,077, 50,160.

First District, Second Division.

January 18, 1966.

Harry I. Parsons, of Chicago (Robert Jay Nye, of counsel), for La Salle Construction Co., appellant; Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, Bernard Harrold, and John M. O'Connor, Jr., of counsel), for Johns Manville Dutch Brand Products Corp., defendant-appellant; Howard & French, of Chicago (Norton Wasserman, of counsel), for Asbestos Wood Manufacturing Co., defendant-appellant; Hubbard, Hubbard, O'Brien & Hall, of Chicago, for Boice Roofing Co., third party defendant-appellant.

Michael H. Postilion, of Chicago (Fitzpatrick, Postilion, Zegiel & Heineman, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a judgment in favor of plaintiff, which has been consolidated with appeals from judgments in favor of various defendants against other defendants.

On July 29, 1957, a roof was being completed upon a building owned by defendant, Johns Manville Dutch Brands Products Corporation (hereinafter referred to as Johns Manville). Johns Manville engaged architects to draw up plans and specifications and defendant, LaSalle Construction Company (hereinafter referred to as La Salle), was the general contractor. Work proceeded according to the plans and specifications to a point where the I-beam supports for the roof were in place. Underlying beams extended from north to south, parallel to each other, approximately four feet apart. There were no direct cross supports between the I-beams.

A transite roof deck was then erected. The materials specified for the roof deck were as follows:

2502. Corrugated Cement Asbestos: Shall be "Corrugated Transite" as manufactured by Johns Manville Products Corp., shall have 4.2″ pitch; shall be 42″ wide, ten corrugations per sheet.

2504. Fasteners: Corrugated transite may be secured with any standard J-M approved fasteners such as standard clip-on-methods, Nelson Stud fasteners, or Fabco self-tapping screws per Johns Manville standard specifications. . . .

Delivery and Handling
2505. . . .
No cracked or broken sheets shall be used. . . .

Erection-Transite
2506. Sheets shall be of such length that all end joints center over a framing member and shall be laid smooth side down, with all joints butted together.

2507. Transite sheets shall be secured at all framing members by means of the approved methods scheduled in paragraph 2504 above.

The transites were obtained from Johns Manville directly. The Johns Manville transite was a white corrugated material which was not transparent. Prior to delivery each transite was subjected to a weight of more than eight hundred pounds at its center by a hydraulic cylinder. A Johns Manville resident engineer was at the construction site to enforce the above specifications.

The sub-contractor who installed the corrugated transites was the Asbestos Wood Manufacturing Company (hereinafter referred to as Asbestos). The transites were bolted to the I-beams. To do this, holes were drilled through the material and the top of the I-beam. The bolts or fasteners were applied with a torque device and then automatically disengaged. The number of fasteners used was based upon the recommendation of the manufacturer, Johns Manville.

On July 29, 1957, plaintiff arrived on the job site about 7:55 a. m. He was one of the roofers employed by the roofing contractor, Boice Roofing Company, (hereinafter

referred to as Boice). He had been a roofer about ten years. All prior roof decks which he worked on had cross support beams directly under them. After he helped to unload insulation from a truck, he was called to the roof by his foreman. Seventy pound bundles of insulation were lifted to the transite roof deck by a rope and an A-frame hoist, and placed upon the deck by plaintiff and four or five other roofers.

Plaintiff testified that after he got up on the deck and set the A-frame hoists, he laid planks in an east-west direction on the transites. He then wheeled two 70-pound packages of insulation on the planks to where they were needed. On one of his trips, plaintiff wheeled in a westerly direction along the planks for about 60 feet from the A-frame hoist when he turned to the north and traveled on the deck in a northerly direction for 50 more feet without any planking under him. When plaintiff arrived at a place about 50 feet north of the plank, he noticed that the roof sagged a bit under his weight. He continued, however, and unloaded the wheelbarrow. He then returned to the spot where he noticed the sag and tested it.

When plaintiff tested the spot, he noticed that there was a crack in the transite and that it would give or yield. The crack was a hairline crack about two feet long. "The crack was parallel to the I-beam" said plaintiff, and the nearest bolt "was approximately six inches away" from where the crack began. Neither he nor the other roofer had noticed the spongy spot prior to the time plaintiff felt the sag in the roof. Plaintiff's partner complained to the roofing foreman that the deck was unsafe but the foreman said, "It's all right." Plaintiff testified that after testing the crack with his hands, he yelled to his foreman telling him about the crack. The foreman denied this. Plaintiff then walked back to the piled insulation and returned along an unplanked

140

route to the same spot with a bundle of insulation. Plaintiff later stated, "I had stepped out onto the transite section with this seventy pound bundle, where the crack was, when I went through and suffered the accident." Plaintiff injured his feet, hip and hand or wrist.

Plaintiff's complaint alleged specific acts of negligence against the owner-manufacturer, Johns Manville; against the general contractor, LaSalle; and against the subcontractor, Asbestos.

At the trial, after the evidence was heard, the court, at the request of plaintiff, gave to the jury plaintiff's instruction No. 8, which was objected to by all defendants. This instruction stated:

> The plaintiff claims that he was injured and sustained damage while exercising ordinary care and that the defendants or one or more of them, were negligent in one or more of the following respects:
>
> Permitted the use of unsafe decking;
>
> Failed to inspect the decking, although the defendants knew that the decking was intended to support men working at great height from the ground;
>
> Furnished material which was at all times likely to crack when used as a decking for a flat roof;
>
> Suffered and permitted an unnecessarily large number of holes to be drilled into the said material, although the defendants knew, or in the exercise of ordinary care should have known, that the drilling of such holes would greatly weaken the material;
>
> Suffered and permitted the erection of the decking in such a manner that no cross supports were used so that the decking was likely at all times to crack and give away;
>
> Failed to see that cross supports were used, although their use was necessary for all persons standing on the decking;

141

Failed to warn the plaintiff of the cracks throughout the decking;

Failed to inspect the material used in the decking;

Drilled various holes in the decking, causing it to crack and weaken;

Failed to replace sections of the decking that had been cracked.

The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries.

The defendants deny that they were guilty of negligence in doing any of the things claimed by the plaintiff and deny that the plaintiff was in the exercise of ordinary care. The defendants further deny that plaintiff was injured or sustained damages to the extent claimed.

The court also gave plaintiff's instruction No. 9, which was objected to by all defendants. This instruction stated:

Under our law, Harold Sullivan may attempt to prove in either of two ways that the defendants were negligent. He may prove either what the particular defendants actually did or did not do, or on the other hand, he may attempt to prove the following propositions:

First: That the plaintiff just before and at the time of the occurrence was using ordinary care for his own safety.

Second: That the plaintiff was injured in his person.

Third: That the injury was received from a decking which had been under the control or management of one or more of the defendants.

Fourth: That in the normal course of events, the injury would not have occurred if the defendants, under whose control or management the decking

142

had been, had used ordinary care while the decking was under their control or management.

If you find that each of these propositions has been proved, the law permits you to infer from them that the defendants under whose control and management the decking had been were negligent with respect to the decking while it was under their control and management.

If you do draw such an inference, your verdict must be for the plaintiff if any injury proximately resulted. But if, on the other hand, you find that any of these propositions has not been proved as to a particular defendant, or if you find that a particular defendant used ordinary care for the safety of others in its management of the decking, then your verdict should be for that defendant.

The jury returned a verdict against all three defendants in the sum of $15,000 and judgment was entered thereon. Post trial motions were denied.

After plaintiff obtained judgment, several actions-over were determined. A judgment on the pleadings was entered in favor of Johns Manville against both Asbestos and Boice in the sum of $15,000. The gravamen of the Johns Manville pleading was a contract clause requiring Asbestos to indemnify Johns Manville if Asbestos was the cause of the injury to Sullivan or if the injury to Sullivan was incidental to the execution of the work by Asbestos. The answer alleged affirmative defenses. Asbestos and Boice have appealed from this judgment in #50,077 and #50,160 respectively.

A judgment on the pleadings was also entered in favor of LaSalle against both Asbestos and Boice in the sum of $15,000. The gravamen of the LaSalle pleading was also based on a contract clause requiring Asbestos to indemnify LaSalle if Asbestos was the cause of the injury, or if the injury to Sullivan was incidental to the

execution of the work by Asbestos Wood. The answer alleged affirmative defenses. Asbestos and Boice have appealed from this judgment in #50,077 and #50,160 respectively.

The action-over by Asbestos against Johns Manville was dismissed upon the striking of the complaint. Asbestos Wood has appealed from this judgment in #50,077.

An action-over by Asbestos against Boice has not been expressly determined and an action-over by Johns Manville against LaSalle has been severed for trial.

Defendant, LaSalle Construction Company, states as its theory of the case that as a matter of law plaintiff was guilty of contributory negligence; that as a matter of law plaintiff assumed the risk of the defects known to him; that as a matter of law defendant, LaSalle, was not negligent in the manner claimed by plaintiff and specified in the amended complaint; that the trial court committed prejudicial error by allowing the doctrine of res ipsa loquitur to be applied, by rendering an excessive verdict and judgment in view of the evidence, by permitting plaintiff to file an amendment to his complaint, and by allowing plaintiff to testify concerning his experiences on other jobs; and that the trial court committed prejudicial error by giving instructions which ignored the question of assumption of risk and contributory negligence, which assumed facts not in evidence, which erroneously imposed legal duties upon defendant, LaSalle, and which allowed a verdict for plaintiff when his negligence may have combined with that of another to cause the injury.

Defendant, Johns Manville states as its theory of the case that plaintiff was guilty of contributory negligence as a matter of law; that it was not guilty of any negligence toward plaintiff; and that the trial court erred in charging that the doctrine of res ipsa loquitur was applicable since defendant, Johns Manville, unlike the other

144

defendants, lacked any control over the section of roof decking in question and since plaintiff pleaded and relied upon specific acts of negligence on the part of the defendants.

Defendant, Asbestos Wood Manufacturing Company, states as its theory of the case that plaintiff was guilty of contributory negligence as a matter of law; that there was no negligence on the part of Asbestos; that the instruction charging that the doctrine of res ipsa loquitur was applicable was erroneously given to defendant, Asbestos; and that the instructions were unsupported by the evidence.

Plaintiff states as his theory of the case that plaintiff was not guilty of contributory negligence as a matter of law; that the doctrine of res ipsa loquitur was correctly given; and that the verdict was not excessive or against the manifest weight of the evidence.

A common contention raised by the various defendants is that the trial court committed prejudicial error in giving an instruction that the doctrine of res ipsa loquitur was applicable. In support of their contention they propound, one, that the doctrine of res ipsa loquitur is not applicable in cases involving multiple parties exercising different authority over the injury producing instrumentality and two, that the principle is not applicable where plaintiff relies solely on acts of specific negligence. Inasmuch as we agree with the various defendants as to the latter proposition, we do not have to discuss the former.

■ It has frequently been held by the courts of Illinois that the res ipsa loquitur principle is not available where a plaintiff relies solely upon specific allegations of negligence. Kerby v. Chicago Motor Coach Co., 28 Ill App2d 259, 171 NE2d 412 (1960); Jackson v. 919 Corp., 344 Ill App 519, 101 NE2d 594 (1951). In support of his position, plaintiff relies on the case of Cobb v. Marshall Field and Co., 22 Ill App2d 143, 159

145

NE2d 520 (1959). In that case, however, the court only held that plaintiff was not prejudiced by the fact that counts of general and specific negligence, which had been pleaded by plaintiff, went to the jury. That holding is irrelevant to the issue at hand, which is whether the jury can properly be charged on the doctrine of res ipsa loquitur when plaintiff relies solely on specific allegations of negligence.

In Erckman v. Northern Illinois Gas Co., 61 Ill App2d 137, 210 NE2d 42 (1965), the court was faced with the same problem facing us in the instant case. There the trial court submitted an instruction, which permitted the jury to apply the doctrine of res ipsa loquitur. The defendant contended that this was improper because only specific negligence was pleaded. The court found that the giving of this instruction constituted reversible error in that it permitted the jury to apply the res ipsa loquitur inference of general negligence to the case when general negligence had not been pleaded. We affirm the ruling of that court that, specific allegations of negligence standing alone, will not support application of the res ipsa doctrine. The plaintiff's instruction No. 9 given by the trial court on res ipsa loquitur over the defendants' objections was prejudicial to defendants.

Plaintiff next implies that the allegations of his complaint are both general and specific and thus, application of the doctrine was permissible. An examination of the complaint reveals that the allegations are specific only. We do not have to decide whether or not an instruction on res ipsa loquitur is applicable where a plaintiff pleads both general and specific allegations of negligence.

Inasmuch as we are remanding the case for retrial, because of the prejudicial instruction given by the trial court, we do not rule on most of the remaining appeals, as they involve actions over and between the

various defendants. In the action over by Asbestos, however, which came up to this court in #50,077, we find that the trial court properly dismissed the action. An examination of the complaint of Asbestos reveals the complaint was defective because the action over was based on a theory of breach of implied warranty, but no sale was alleged between the parties.

Even though we do not rule on the merits of the remaining appeals, an examination reveals that the rulings of the trial court on the various actions over involved in #50,077 and #50,160 were proper.

The judgment in appeal #49,584 is reversed and the cause remanded with directions for further proceedings consistent with these views.

The judgment of dismissal in the action over by Asbestos against Johns Manville, which was also involved in #50,077, is affirmed.

The judgments in all the actions over in appeals #50,077 and #50,160 (except the action over by Asbestos against Johns Manville, which is affirmed) are reversed and the causes remanded, with directions for further proceedings consistent with these views.

Judgment reversed and remanded with directions as to #49,584.

Judgment affirmed as to that part of #50,077 in the action over dismissing complaint by Asbestos against Johns Manville.

The judgments in all the actions over in appeals #50,077 and #50,160 (except the action over by Asbestos against Johns Manville, which is affirmed) are reversed and the causes remanded with directions for further proceedings consistent with these views.

BRYANT, P. J. and BURKE, J., concur.

ON REHEARING

Having examined the petition for rehearing, the answers and the reply and having reconsidered the original briefs and arguments, we have decided to adhere to our opinion.