BEVERLY LANDESMAN, Individually and as Representative of a Class, Plaintiff-Appellant, *v.* GENERAL MOTORS CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 60411

Opinion filed September 22, 1976.

364

BURMAN, J., dissenting.

Landesman & Schwartz, William J. Harte, Ltd., Kevin M. Forde, Ltd., and Daley, Reilly & Daley, all of Chicago, for appellant.

Frank F. Fowle and Thomas D. Nyhan, both of Pope, Ballard, Shepard & Fowle, of Chicago, and Frazer F. Hilder, of Detroit, Michigan, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This appeal is taken from an order of the Circuit Court of Cook County sustaining a motion to dismiss a complaint for a class action suit.

The issue presented is whether the complaint alleges proper grounds for a class action under the law in Illinois.

In February of 1972, General Motors Corporation (hereinafter called "defendant") sent form letters to the owners of many of its automobiles. This notification was specifically made applicable to 1968 Chevrolet autos. The substance of this form letter alerted the owner of a "possible safety hazard" existing in the auto. The owner was informed that as a result of fatigue, the rubber portion of an engine mount may separate. When this condition exists rapid acceleration from a stop or from low speeds can result in the following: (1) inability to close the open throttle; (2) loss of the use of the power braking system; (3) interference with the clutch or shift linkage; and (4) overall loss of control of the vehicle.

Defendant suggests, in the letter, to avoid rapid acceleration from low speeds until restraints have been installed by a General Motors dealer. Furthermore, if the resulting condition of loss of control does occur "the driver should turn off the ignition and apply sufficient pressure on the brake pedal to bring the vehicle to a stop."

Defendant's letter, along with urging the owner to take his auto to a General Motors dealer, also included a promise to install restraints on both sides of the engine at no cost to the owner.

On August 14, 1972 Beverly Landesman (hereinafter called "plaintiff" or "named plaintiff") purchased a 1965 Chevrolet V-8 Impala stationwagon from Marvin Long, who was then the second owner of the

auto. The original owner of the auto, Luther Watson, purchased the auto in August of 1965 from an unidentified Chevrolet dealer.

In her complaint, plaintiff alleges defective engine mounts exist in all 1965, 1966, 1967, 1968 and 1969 standard size Chevrolet V-8 autos, all 1965 and 1966 V-8 Nova models and certain trucks manufactured by defendant. On making these allegations plaintiff relies on information and belief, and pursuant to unspecified public statements made by representatives of General Motors.

In response to defendant's admissions and warnings plaintiff brought her auto to Joe Jacobs Chevrolet, an authorized Chevrolet dealer in Wilmette, Illinois, for service, and was advised the front engine mounts were defective and should be replaced. Plaintiff ordered replacement of the mounts, for which she was charged $41.30.

On August 30, 1972, plaintiff brought this action on her behalf and on behalf of the class of all owners of General Motors vehicles with defective motor mounts who have paid or will be required to pay for the correction of the defect.

The complaint contained two counts: breach of warranty and strict liability.

Defendant moved to strike and dismiss the complaint as being inadequate as a matter of law.

On February 1, 1974, the trial court granted defendant's motion and dismissed the complaint upon a finding "the allegations set forth in plaintiff's complaint do not constitute grounds for a class action suit under the established laws in Illinois."

Upon said finding the Circuit Court of Cook County ordered the complaint be dismissed. From this order plaintiff has taken this appeal.

There is no statutory law which governs class action in Illinois. Judicial authority controls.

■■ To maintain an action as a class action in Illinois the proponent must establish the following: (1) there are common dominant and pervasive questions concerning members of the class; (2) there is a class of plaintiffs too numerous to join in a single action; and (3) the named parties adequately represent all members of the class. See *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595; *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 90, 55 N.E.2d 147.

The defendant questions whether the first and third requirements listed above have been satisfied by the allegations in the complaint.

The defendant points to certain facts in the record and argues the number and complexity of the issues presented preclude a finding the common questions as to the class are dominant and pervasive. Plaintiff seeks to represent a class including as many as 6.7 million persons who

own Chevrolet vehicles, each of which had its own unique history of ownership, use, care, maintenance and service for as many as seven years. Also, defenses could be urged against some members of the class but not against others.

Plaintiff refers to her complaint, and notes the class is limited to owners of General Motors vehicles with defective motor mounts and who have paid or will be required to pay a charge for the replacement of the defective motor mounts. Plaintiff suggests all class members share the common central and dominant issue of whether the requirement to pay is proper.

It is significant that the defendant, by its own form letter, treated owners of 1968 model Chevrolets as a single class, with each member having parallel rights. The record does not reveal the number of persons receiving this form letter, however, defendant's brief and oral argument established it was a large number, into the thousands. Only defendant knows how many letters were sent and to whom.

We think the court's reasoning in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595, is applicable. The court there said, "* * * Where it appeals that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action. * * * [I]t can hardly be said that it [the defendant] will suffer greater inconvenience by litigating those issues in a single action instead of in separate actions." *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598.

■■ In her complaint the plaintiff did present common questions which were dominant and pervasive to the class litigation.

The next question submitted is whether plaintiff can adequately and fairly represent the rights and interests of the class.

Although the named plaintiff did not deal directly with the defendant in the purchase of her automobile, we see no reason why the named plaintiff cannot adequately protect the warranty claims of those members of the class who did buy directly from the defendant. Similarly, even though the plaintiff was the owner of a 1965 auto, and the form letter specifically referred only to 1968 models, the size of the class is a matter of proof to be determined at trial. Defendant's form letter to owners of 1968 models does not limit the class as a matter of law, inasmuch as it is alleged the other models also have the same motor mount problems.

It is our opinion minor variations in issues between the named plaintiff and members of the class may be litigated in the same class action so long as the named plaintiff's interests are compatible with—and not antagonistic to—those of the class.

It is a fundamental rule that persons voluntarily assuming the duty of

prosecuting a class suit are legally and equitably bound to discharge such duty faithfully and honestly.

■■ Of course, where it is shown to the court that the action is not being prosecuted to the best interests of all those in whose behalf the suit was instituted, any person of the class so situated may file a motion to be made a party to the action, and may file a motion seeking an order allowing separate representation.

■■ We find the named plaintiff is in a position to adequately represent all of the members of the class.

We hold plaintiff's complaint does allege proper grounds for a class action suit under the laws of the State of Illinois.

Defendant's brief raises the issue of whether the complaint states a good cause of action in warranty or strict liability, however, this issue is not included in either the trial judge's order or in the plaintiff's notice of appeal.

On appeal from a judgment or order of dismissal, questions necessarily involved in determining the propriety of the judgment or order, and only such questions, will be considered. See *Stelling v. Stelling* (1926), 323 Ill. 122, 153 N.E. 718; *Krom v. Public Utilities Service* (1943), 318 Ill. App. 639, 48 N.E.2d 545.

■■ This opinion does not include a ruling on the issue of whether a cause of action on the merits was alleged, since such issue is not properly before us.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby reversed and remanded for further consideration consistent with this opinion.

Reversed and remanded.

JOHNSON, P. J., concurs.

Mr. JUSTICE BURMAN, dissenting:

I would sustain the judgment of the trial court, for the complaint fails to allege a cause of action, and further does not set forth proper grounds for a class action suit.

The record reveals that the 1965 Chevrolet stationwagon presently owned by plaintiff originally was sold to Luther P. and Letha B. Watson in August of 1965 by an unidentified Chevrolet dealer. Approximately five years later, the Watsons sold the vehicle to Wil-Shore Sales. Shortly thereafter, Wil-Shore sold it to Marvin P. Long. On August 14, 1972, seven years after its sale as a new car, plaintiff purchased the car from Long.

Some time between August 14 and August 30, 1972, plaintiff brought her 1965 automobile to Joe Jacobs Chevrolet Company for service, and

was advised that the front engine mounts in her car should be replaced. She ordered the replacement, for which the dealer charged her $41.30. On August 30, 1972, just 16 days after plaintiff had purchased the car, she instituted this suit against General Motors.

Plaintiff relies heavily on a letter mailed by General Motors in February, 1972. The letter states in pertinent part:

" [W]e are sending this letter to call to your attention a possible safety hazard which exists should a separation of an engine motor mount occur on your vehicle. If you will take your vehicle to any Chevrolet dealer, restraints (iron straps) will be installed, at no cost to you, to eliminate this possible safety hazard. We urge that you do so.

"Your vehicle is equipped with two front engine mounts * * *. An engine mount consists of a rubber cushion sandwiched between metal plates. * * * Since the rubber portion of an engine mount is made of rubber, it is subject to fatigue from constant flexing during vehicle operation and from engine compartment heat. Replacement of fatigued engine mounts is a part of vehicle maintenance which is the responsibility of the owner.

* * *

Chevrolet has developed special restraints for installation in affected vehicles. * * * Installation of these restraints * * * will eliminate the possible safety hazard associated with engine mount separation which is described in this letter."

Plaintiff's complaint, entitled "Complaint of Injunction and Other Equitable Relief," contains two counts, one for breach of warranty, and the other for strict liability in tort. She sues not only in her own behalf, but also as a representative of all Chevrolet owners throughout the United States who may be similarly situated. General Motors estimates this class to include as many as 6.7 million members. Although the trial court in its order addressed itself solely to the propriety of the class action, I believe it nevertheless is necessary to examine the sufficiency of the complaint; for where the plaintiff has no individual cause of action, it necessarily follows that any attempted class action also must fail. *Dvorkin v. Illinois Bell Telephone Co.*, 34 Ill. App. 3d 448, 340 N.E.2d 98.

In Count I plaintiff alleges *inter alia* that she owns the described 1965 vehicle which was manufactured and sold by General Motors; that she was advised that said automobile contained a possible safety hazard, to wit: defective front engine mounts; that on information and belief and pursuant to statements made by representatives of General Motors, this defect exists in all 1965, 1966, 1967, 1968 and 1969 standard size Chevrolet V-8 automobiles manufactured by General Motors and in other described vehicles; that such defects existed at the time said vehicles left the

possession and control of General Motors; and that the total number of automobiles containing the same possible safety hazard exceeds 6.7 million. Plaintiff further alleges that due to the defect in her automobile and in response to the warnings and public recall by General Motors, she brought her car to a Chevrolet dealer who advised her that "the motor mounts on her vehicle should be replaced"; and that the charge for service constituted a breach by General Motors of its express and implied warranty that the vehicles were free from any defect at the time of manufacture and sale.

One need hardly mention that a complaint for breach of warranty must allege well-pleaded facts establishing (1) the existence of a warranty, and (2) a breach thereof. With regard to the former requirement, plaintiff's allegations at best can be characterized as ambiguous conclusions. While she alleges the existence of an express warranty, it is neither attached to the complaint, nor are its terms alleged. Reference to an implied warranty is equally vague and conclusionary. Moreover, assuming that plaintiff has adequately pleaded the terms of the warranties, she has not alleged facts from which it follows that she is entitled to their benefit. In Illinois an action for breach of warranty, either express or implied, requires privity of contract. (*Paul Harris Furniture Co. v. Morse*, 10 Ill. 2d 28, 139 N.E.2d 275; *Sullivan v. La Salle Construction Co.*, 69 Ill. App. 2d 137, 217 N.E.2d 90.) Plaintiff alleges no contractual relationship with General Motors. A fair reading of the complaint indicates that she purchased a seven-year-old vehicle from a private individual with no warranties attached.

Further review of the complaint reveals that plaintiff has not plainly and squarely alleged facts establishing any breach of warranty. She alleges that General Motors advised her of a *possible* safety hazard, to wit: defective front engine mounts. She further states that upon inspection of her seven-year-old automobile, a Chevrolet dealer told her that her front engine mounts should be replaced. Certainly, these are not allegations that a defect existed in the car at the time it left the possession and control of General Motors. Liability cannot be predicated upon such a tenuous basis.

As stated above, in Count II plaintiff seeks to recover under strict liability in tort. Count II contains the same allegations as Count I except that it eliminates the warranty allegations and substitutes allegations that a *possible* safety hazard in her 1965 Chevrolet automobile rendered the vehicle unreasonably dangerous. She further alleges that General Motors is strictly liable to her for the damages incurred as a result of the replacement of the defective engine mounts.

In Illinois the concept of strict liability has been extended to manufacturers of products whose defective condition makes them unreasonably dangerous to the user or consumer. (*Suvada v. White Motor*

*Co.,* 32 Ill. 2d 612, 210 N.E.2d 182.) The Illinois courts, however, have not extended the doctrine to situations in which an allegedly defective product has resulted in nothing more serious than economic loss. (*Rhodes Pharmacal Co. v. Continental Can Co.,* 72 Ill. App. 2d 362, 219 N.E.2d 726.) Thus, this State is in accord with the Restatement view in that it permits recovery only for physical harm to the user or to his property. (Restatement (Second) of Torts §402A (1965).)

In her complaint plaintiff does not allege that the defective engine mounts in her automobile, or in any other 1965-1969 Chevrolet, resulted in physical harm to her or her property, or to others or their property. Rather she alleges a mere economic loss, *i.e.,* the replacement value of the defective mounts. As stated above, such an injury is not actionable under the doctrine of strict liability. Accordingly, the complaint should have been dismissed.

The foregoing demonstrates that plaintiff has no individual cause of action; and on that basis alone her attempted class action also must fail. But even if plaintiff had stated an individual cause of action, the order of the trial court still must be affirmed. I cannot agree with the majority opinion that plaintiff has set forth proper grounds for a class action suit in Illinois.

The majority accurately sets forth the requirements for a class action in Illinois; but I believe their application of the rule is strained. It has been said that the procedure requires close and vigilant scrutiny by the courts. (Fox, *Representative Actions And Proceedings,* 1954 U. Ill. L. F. 94.) Thus, as a general principle, where the right to maintain a class action is doubtful, permission generally will be denied. (*Reardon v. Ford Motor Co.,* 7 Ill. App. 3d 338, 287 N.E.2d 519.) Such a judicial posture manifests a genuine concern for the real and obvious dangers inherent in representative suits.

The class which plaintiff purports to represent includes all owners of General Motors products with defective motor mounts who have paid or who will be required to pay for the replacement of said parts. In support of her request that the action be maintained as a class action, plaintiff further alleges as follows: (1) that the proposed class is so numerous that joinder of all members in one action is impractical; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative parties are typical of the claims of the class; (4) that plaintiff will fairly and adequately protect the interests of the class; (5) that there is no other adequate remedy; and (6) that the litigation of this action as a class may prevent a multitude of other suits.

The gist of plaintiff's complaint is that over a span of five years an enormous number of individuals purchased General Motors products, and that all of these purchasers share the common problem of a possible

defect in their front engine mounts. Upon this basis it is submitted that the owners, as a class, are entitled to legal redress from defendant. I cannot agree, for the mere fact that there are numerous aggrieved parties all of whom have similar claims against a defendant is not alone sufficient to support a class action in our State. *Reardon v. Ford Motor Co.*, 7 Ill. App. 3d 338, 287 N.E.2d 519.

The case of *Reardon v. Ford Motor Co.*, cited above, is virtually identical to the case at bar. There the plaintiffs, three Ford owners, sued Ford Motor Company on behalf of a national class of 4,000,000 persons who had purchased Ford automobiles in 1965 and succeeding years. There, too, the plaintiffs alleged that the vehicles contained a possible safety hazard. Specifically, they alleged that the front wheel suspension systems of all of the automobiles in question were defective because said systems contained lower control arms that experienced progressive fatigue which eventually could cause front wheel collapse. The court acknowledged that the multitude of owners may have common questions of law or fact; however, it pointed out that such common questions alone are not sufficient to sustain a class action. In dismissing the plaintiffs' attempted class action, the court made several observations that are equally applicable here. The court noted that the suit did not stem from one sale, but rather from millions of individual transactions throughout every one of our 50 States. Consequently, even if the three plaintiffs were successful in their individual actions, the remaining members of the class could not recover as a matter of course. Each transaction which resulted in a purchase had its own unique history which obviously would require separate evidence from each purchaser. Moreover, the matter is further complicated by the fact that procedural questions, evidentiary questions, and various defenses such as the statute of limitations vary from State to State. Thus, as in the case at bar, the suit lacked the requisite community of interest in the subject matter and community of interest in the relief sought necessary to sustain the class action.

The decision in *Reardon* is not unique to the law. Numerous cases sustain the proposition that an action may not be maintained as a class action where the claims of the individual class members are based on separate and distinct questions of fact. (*E.g.*, *Hagerty v. General Motors Corp.*, 59 Ill. 2d 52, 319 N.E.2d 5; *Newberry Library v. Board of Education*, 387 Ill. 85, 55 N.E.2d 147; *Dvorkin v. Illinois Bell Telephone Co.*, 34 Ill. App. 3d 448, 340 N.E.2d 98; *Edelman v. Lee Optical Co.*, 24 Ill. App. 3d 216, 320 N.E.2d 517.) This is precisely the situation at bar. Each member of the class would have to prove that he was the owner of a Chevrolet manufactured and sold during 1965-1969; that his vehicle in fact contained defective engine mounts; that the defect existed at the time the vehicle left the manufacture and control of General Motors; and that it

was the defect in the engine mounts that require the replacement rather than ordinary wear and tear. I cannot agree with the majority that these are "hypothetical variations of a minor character."

In conclusion I must note that by the very nature of a class action, the decree or judgment is binding upon all members of the class. (*Newberry Library v. Board of Education*, 387 Ill. 85, 55 N.E.2d 147.) Accordingly, upon remandment of this cause, should the trial court find that plaintiff's engine mounts were not defective or that seven years of ordinary wear and tear required the replacement of plaintiff's mounts, the entire class will likewise be denied relief notwithstanding the merits of their individual claims. To so deprive as many as 6.7 million persons of an opportunity to be heard would be an injustice of the highest magnitude.

For these reasons I must respectfully dissent from the majority opinion.