*In re* MARRIAGE OF MARY E. DUNN, Petitioner-Appellee, and HARVEY K. DUNN, Respondent-Appellant.

Fourth District   No. 4—86—0367

Opinion filed April 9, 1987.—Modified on denial of rehearing June 3, 1987.

Jan H. Ramsey, of Harlan Heller, Ltd., of Mattoon, for appellant.

Robert E. Brown, of Ronald Tulin, Ltd., of Charleston, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

A judgment of dissolution of marriage was entered in this matter on September 29, 1980. At that time, the petitioner, Mary Dunn, was given custody of the parties' one-year-old daughter, and the respondent, Harvey Dunn, was granted certain rights of visitation. The respondent exercised his right of visitation on a regular basis until January 1984, when the petitioner refused to continue allowing the respondent to have visitation with his daughter. Subsequently, the re-

spondent filed a petition for rule to show cause why the petitioner should not be held in contempt for failing to abide by the court's order concerning visitation. The petitioner asserted that the respondent had sexually abused the child in late December 1983 as a defense to the petition for rule to show cause. The petition was heard in April 1984. After the hearing, the court denied the petition, but made clear that it was not convinced that the respondent was guilty of sexual abuse. Visitation was allowed to continue with the restriction that the respondent seek counselling at a county mental health center and sign a waiver enabling the health center to send any report or evaluation it might prepare to the court.

In October 1984, the petitioner again refused to allow the respondent to visit the child. The respondent filed a second petition for rule to show cause. The petitioner responded with the same defense as to the first petition, that the respondent had sexually molested the child in late December 1983. In addition, the petitioner filed a motion to terminate visitation. After the hearing on the motion to terminate visitation and the petition for rule to show cause, the trial court found that the respondent had sexually abused the child and terminated his rights of visitation. The respondent appeals the ruling on several grounds. We reverse.

We will first address the respondent's argument that the trial court erred in granting the motion to terminate visitation because it was barred by the doctrine of *res judicata*. The respondent contends that the trial court's decision to deny his first petition for rule to show cause, wherein the court stated that it was not convinced that the respondent was guilty of sexually abusing his daughter in late December 1983, barred the subsequent hearing on the motion to terminate visitation, wherein the petitioner alleged that the respondent had sexually abused the child in late December 1983.

■■ The principle that underlies the doctrine of *res judicata* is that "the court will not relitigate a matter which has been previously determined in an action between the same parties." (*Ohio National Life Insurance Co. v. Board of Education* (1944), 387 Ill. 159, 166, 55 N.E.2d 163, *cert. denied* (1945), 323 U.S. 796, 89 L. Ed. 635, 65 S. Ct. 439.) The doctrine of *res judicata* is two-pronged, and the respondent seeks to impose both prongs as a bar to the motion to terminate. The first prong is the doctrine of estoppel by judgment. When a cause of action has been litigated in a court of competent jurisdiction to a final judgment on the merits, the parties to that action are thereafter estopped from relitigating in a subsequent action, not only issues which were in fact raised and decided in the prior action, but

also all other issues which might have been raised in the prior action. (*City of Evanston v. G & S Mortgage & Investment Corp.* (1973), 11 Ill. App. 3d 642, 297 N.E.2d 331.) This doctrine requires that there be an identity of parties, subject matter and cause of action between the two actions. *O'Neill v. DeLaney* (1980), 92 Ill. App. 3d 292, 415 N.E.2d 1260.

■ We do not believe that the hearing on the motion to terminate visitation was barred by the doctrine of estoppel by judgment. Though the parties were identical, neither the identity of the subject matter nor identity of the cause of action requirements were met. In the respondent's first petition for rule to show cause, the subject matter was the denial of visitation rights by the petitioner and the petitioner's state of mind as to why she denied those rights. The subject matter of the motion to terminate visitation was whether the respondent had sexually abused his daughter. With reference to the requirement that there be identity between the causes of action, the test is "whether there is identity of facts essential to the maintenance of both cases." (*Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 750, 410 N.E.2d 925.) Here, the evidence needed to sustain the petitioner's defense to the initial petition for rule to show cause was not the same evidence needed to sustain her petition to terminate visitation. To defend the first petition for rule to show cause, and avoid a finding of contempt, the petitioner had to demonstrate to the court that her conduct in disallowing visitation was not wilful and contumacious. Her state of mind was at issue. In order to prevail on the motion to terminate visitation, she had to convince the trier of fact that the sexual abuse had in fact occurred, and that the abuse seriously endangered the child's physical, mental, moral or emotional health. Ill. Rev. Stat. 1985, ch. 40, par. 607.

■ The second prong of *res judicata* is the doctrine of collateral estoppel. When, in a subsequent action on a different cause of action between the parties to a prior action, there arises an issue which was in fact raised and decided in the prior action, then the parties to the subsequent action are estopped by the verdict in the prior action from relitigating that issue. (*City of Evanston v. G & S Mortgage & Investment Corp.* (1973), 11 Ill. App. 3d 642, 297 N.E.2d 331.) Even assuming that the issue of whether the respondent had sexually abused his daughter was raised in the hearing on the first petition for rule to show cause, it was not finally decided by the court. The court simply denied the petition on the ground that the petitioner had not acted contemptuously.

■ The respondent next attacks several evidentiary rulings made

during the course of the hearing on the second petition for rule to show cause and motion to terminate visitation. The nature of the evidentiary issues necessitates a review of the petitioner's case in chief.

The petitioner offered the testimony of several witnesses who recounted statements made by the child concerning the alleged sexual abuse. The first witness was Dorothy Jordan, the child's kindergarten teacher. Ms. Jordan reported that in the spring of 1985, more than a year after the alleged occurrence, the child stated during a general class discussion, "my daddy put his finger in my bottom." Another witness was Eva Metcalf, the child's maternal grandmother. Mrs. Metcalf testified that in May of 1985, one year and five months after the alleged occurrence, the child told her grandmother that the respondent "sticked his finger in my front bottom end and it hurt." The next witness was Martha Carter. Ms. Carter is a child adolescent therapist. She has a bachelor's degree in social work and a master's degree in educational guidance and counseling. She observed and visited with the child on five different occasions, beginning 10 months after the alleged occurrence, at the request of the petitioner's counsel. At trial, Ms. Carter related several statements made by the child during these visits concerning the alleged sexual abuse. Finally, the petitioner herself related an occurrence that took place in October 1984, 10 months after the alleged occurrence. At that time, the petitioner was conversing with the child in the child's bedroom when the child started making gasping noises. When asked where and when she had heard that noise, the child responded, "At my Daddy's," and "Last Christmas." According to the petitioner, the respondent was making the noise "while he was sticking his finger in her bottom." When she asked what he was doing with his other hand the child said, "He was touching his own front bottom." The petitioner also related a previous incident of alleged sexual abuse committed on the child by the father, prior to the judgment of dissolution.

Since the child was found incompetent to testify in this matter and thus not subject to cross-examination, counsel for the respondent objected on hearsay grounds to all of the above testimony. An out-of-court statement offered for the truth of the matter asserted therein is hearsay and is inadmissible unless it meets one of the exceptions to the hearsay rule. (*Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 437 N.E.2d 376.) The rule against hearsay evidence, that a witness can testify only as to facts within his personal knowledge and not as to what somebody else told him, is founded on necessity of opportunity for cross-examination, and is a basic, not a technical, rule. (*Novicki v. Department of Finance* (1940), 373 Ill. 342, 26 N.E.2d

130.) Despite counsel's objections, however, the trial judge allowed the testimony in reliance on this court's decision of *In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912, and in reliance on the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 704–6(4)(c)). We do not agree that these authorities provide a hearsay exception to the statements offered in the instant case.

■ In *Theis*, a custodial parent sought preliminary and permanent injunctions restricting the father's rights of visitation with their two minor children, Timothy and April, on the ground that the father had sexually abused April. The mother testified that the children visited their father in January, February and March. In February, April began wetting her bed and complaining of pain when urinating. In March, April again complained of vaginal pain. The mother consulted Dr. Lu the following month. Dr. Lu had been the child's treating physician since birth and had treated her for a bladder infection in 1982. After ruling out a second bladder infection, the doctor questioned April concerning suspected abuse. As the doctor questioned April, she began to cry. The crying became more severe as April continued to respond positively to the doctor's suspicions of sexual abuse. Though the trial court struck the testimony of the doctor, we reversed and held that the doctor could testify concerning April's statements because the statements were admissible under the spontaneous declaration exception to the hearsay rule. In recognizing this exception, we noted that three factors must be present before a statement can come within the spontaneous declaration exception: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. We further stated:

> "We are aware of the general liberalization of the spontaneous declaration exception in its application to the statements of children of tender years. [Citations.] For example, the first factor, that the statement be spontaneous and unreflective, does not require that the event and the declaration be contemporaneous. The question is whether the circumstances preclude premeditation and design. [Citations.] If the statement occurred after the event, it can be considered 'spontaneous' where there is an indication that the stress created in the child by the event is still present at the time the statement is made. Under such circumstances, the stress activates the original sensations of the event in the memory of the child. Testimony that the child still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice. [Ci-

tation.]" 121 Ill. App. 3d 1092, 1097.

■■ The statements allegedly made to the petitioner, the maternal grandmother, the kindergarten teacher and the child therapist in the instant case were not spontaneous. The statements in *Theis* were made no more than two months after the alleged event, whereas in the instant case they were made a minimum of 10 months after the alleged occurrence. There was no indication that stress created in the child by the alleged event was still present at the time she made the statements. None of the witnesses testified that the child appeared nervous, distraught or emotionally upset when she made the declarations, thus activating the alleged event in her memory. This is different than *Theis* where the child was crying severely as she responded to questions concerning sexual abuse. Thus, *Theis* does not provide support for allowing in the testimony and the general rule against hearsay applies.

In addition, the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(4)(c)) provides no authority for allowing the hearsay testimony. The Juvenile Court Act provides that in determining whether a child has been neglected or abused:

"Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(4)(c).)

This was not an action brought under the Juvenile Court Act. Rather, it is a post-divorce proceeding brought under the Marriage and Dissolution of Marriage Act to terminate previously granted rights of visitation. Thus, reliance on the Juvenile Court Act is unfounded.

■■ The petitioner maintains that if the testimony of Ms. Carter, the child therapist, does not fall within the spontaneous declaration exception to the hearsay rule, it falls within the treating physician exception to the rule. We disagree. The petitioner consulted Ms. Carter at the request of her attorney. Ms. Carter was to make a determination of whether abuse had occurred, and in order to do this, she observed the child's behavior, asked questions and performed some tests. She did not "treat" the child medically or mentally, nor should she, since she is not licensed by the State of Illinois to do so. However, based on her education, background, meetings with the child and the tests that she performed on the child, we do believe that Ms. Carter properly offered her expert opinion on the question of whether the child had been abused. Therefore, this testimony will stand.

■ Next, the respondent argues that the trial court erred in considering the testimony of the petitioner concerning an incident of alleged sexual abuse of the child by the respondent which occurred prior to the dissolution of marriage. Generally, a divorce decree is *res judicata* as to the facts which existed at the time it was entered. (*Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300.) However, "[t]he admission of evidence of material facts existing at the time of an earlier decree, but not then made known to the court, has been approved in cases of custody disputes if those facts tend to show that a change in custody would be in the child's best interests. [Citations.]" (*Valencia v. Valencia* (1978), 71 Ill. 2d 220, 226.) Here, the trial court stated that it was not aware of the incident at the time the judgment for dissolution was entered. Thus, the trial court properly considered the testimony in ruling on the motion to terminate visitation.

■ Finally, the respondent argues that the judgment terminating his visitation rights was an abuse of discretion and against the manifest weight of the evidence. We agree. The Illinois Marriage and Dissolution of Marriage Act provides:

> "(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health.
> ***
> (c) *** [T]he court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health."

(Ill. Rev. Stat. 1985, ch. 40, pars. 607(a), (c).)

In discussing the provisions of the above paragraph, the First District stated:

> "The Commissioner's Note [to this section] described the endangerment standard as 'onerous' and states that 'it was deliberately chosen to indicate its stringency when compared to the "best interest" standard traditionally applied to this problem.' The statute speaks affirmatively of a parent's 'entitlement' to visitation unless the visits would endanger the children." *In re Marriage of Neat* (1981), 101 Ill. App. 3d 1046, 1048, 428 N.E.2d 1093.

This court has also stated:

> "Courts are reluctant to deny all visitation rights because of the underlying rationale that parents have a natural or inherent right of access to their children and that the sound public policy of this State encourages the maintenance of strong inter-

family relationships, even in post-divorce situations. Only very extreme circumstances require and allow the trial court to permanently deprive a parent of visitation. [Citation.]" *Frail v. Frail* (1977), 54 Ill. App. 3d 1013, 1015, 370 N.E.2d 303.

We do not agree that the petitioner met the onerous, stringent standard required to deprive the respondent of visitation with his child in this case. After the improperly admitted hearsay evidence is excluded, the petitioner has left the testimony of Ms. Carter and her own testimony recounting the incident of alleged abuse of the child prior to the judgment of dissolution of marriage. The petitioner maintains that she also has the testimony of Dr. Simeon Grater, who testified on behalf of the respondent, in her favor. Dr. Grater's testimony included his comment concerning a statement the child made to him on July 22, 1985, a year and seven months after the alleged occurrence, about the alleged sexual abuse. It was basically the same statement made to the witnesses whose testimony we have found to be hearsay. Dr. Grater's comments about what the child told him were also hearsay, and even though not objected to by the respondent, ridden with the same problems as the excluded statements. Though we have taken his comments about what the child told him into consideration, we do not believe that they are entitled to much weight.

On the other hand, we must consider the respondent's case. The respondent denied sexually abusing his daughter and also specifically denied the incident of alleged abuse occurring prior to the dissolution of marriage. He also presented the testimony of the child's paternal grandmother, Dorothy Dunn. Mrs. Dunn stated that in late December 1983, the time of the alleged occurrence, the child indicated to her that the petitioner had committed the sexual abuse. This was reported to the Department of Children and Family Services, and as a result, the child was taken to the hospital for an examination. While at the hospital, the child again indicated to the emergency room staff that her mother had sexually abused her. These statements were made within days of the alleged occurrence and the statements to the hospital staff were documented and submitted into evidence.

Mrs. Dunn further testified to a telephone conversation she had with the petitioner in July of 1984. According to Mrs. Dunn, the petitioner called asking for forgiveness. The petitioner stated that the child said her daddy did not touch her. The petitioner responded, "I know he didn't, so we are just going to say that this is an irritation from bubble baths." Although the petitioner had an opportunity to deny this conversation, it was never denied.

We also have the testimony of three psychologists. All of them

agreed that statements made closer to the time of the alleged occurrence are more reliable than statements made after a lapse of time. They also agreed that children can be taught or coached to make statements. Doctor Jerry Boyd, the psychologist testifying on behalf of the petitioner, made no determination as to whether the respondent did or did not sexually abuse the child. Dr. Gary Holt, testifying on behalf of the respondent, was of the opinion that the respondent did not sexually abuse the child. Doctor Simeon Grater, who also testified on behalf of the respondent, said that it was impossible to tell whether the respondent had sexually abused the child. He did observe the child with the respondent and determined that the child was relaxed and happy around her father, that she missed him, and that she had a desire to see him. All of the doctors concluded that visitation between the child and the respondent would not be detrimental, but they did recommend supervised visitation to ensure the child's protection and to ensure the peace of mind of all involved.

For the reasons given, we find that the trial court's decision was against the manifest weight of the evidence and an abuse of discretion. Accordingly, we reverse the decision and remand for a determination of a reasonable visitation arrangement.

Reversed and remanded.

BARRY, P.J., and WOMBACHER, J., concur.