HARRY DEVLIN *et al.*, Indiv. and as a Class, *et al.*, Plaintiffs-Appellants, v. LOCAL NO. 1, Progressive Mine Workers of America, *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0354

Opinion filed December 1, 1988.—Rehearing denied January 5, 1989.

Peter C. Drummond, of Staunton, and Denis McGrady, Sr., of Gillespie, for appellants.

G. William Horsley, of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On June 25, 1985, 12 named plaintiffs filed a complaint in the circuit court of Macoupin County appearing individually and as a class which they subsequently requested the court to certify. A subsequent amended complaint requested a declaratory judgment and injunctive relief against defendants Local Nos. 1 and 34 and their present officers. Defendants moved to "strike" the amended complaint on grounds it failed to state a cause of action and any cause otherwise stated was barred by the doctrine of *res judicata*. On November 3, 1987, the court allowed the motion on the latter grounds. On November 25, 1987, plaintiffs moved for leave to replead and defendants moved for summary judgment based upon the same *res judicata* theory upon which the motion to strike was allowed. On April 18, 1988, the court granted defendants summary judgment and denied plaintiffs' motion to replead. No class was ever certified. Plaintiffs appeal.

The complaint stated plaintiffs were members, widows, or heirs of members of Local Nos. 1 and 34 and sought to sue on behalf of all such persons. They contended the defendant union locals were no longer legal entities because the locals had no contracts with any employers since 1954 and 1968, respectively. They contended the locals held

$103,000 plus interest which was the proceeds paid to them pursuant to a court order in Macoupin County cause No. 82—MR—4 in the same court as a portion of the proceeds arising from the sale of a funeral home operation owned by the two locals. The complaint asserted the locals held this money in trust for the class of persons which plaintiffs sought to represent. Plaintiffs requested (1) a declaration that their class was entitled to a distribution of those proceeds to them on an equitable basis, and (2) the appointment of a receiver to obtain those proceeds and to make distribution.

On appeal, plaintiffs maintain: (1) application of the doctrine of *res judicata* was error because, as between this case and case No. 82—MR—4, neither identity of parties acting in the same capacity nor identity of subject matter existed; (2) entry of summary judgment was error when no pleadings existed upon which the judgment could operate; (3) entering of summary judgment was error because the proceeding was a class action and no class had been designated to which the judgment applied; and (4) the court erred in not allowing plaintiffs to replead.

We examine first the question of whether identity of parties, subject matter, and cause of action existed between the present case and prior case No. 82—MR—4. When that is so, of course, the decision in the prior case is binding on the parties to the subsequent case. (*City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305; *Beckman v. Freeman United Coal Mining Co.* (1986), 151 Ill. App. 3d 47, 502 N.E.2d 64.) In order to determine that question here, a somewhat detailed explanation of the facts involved is necessary. The existence of the background information in the succeeding paragraphs is apparently not disputed by the parties.

From the 1920's up until they shut down in the 1950's or 1960's, the Little Dog Coal Company (Little Dog) and Superior Coal Company (Superior) employed coal miners to work in their mines. These miners were initially members of the United Mine Workers and subsequently became members of the Progressive Mine Workers of America. Employees of Superior belonged to Local No. 1, while employees of Little Dog belonged to Local No. 34.

The Union Funeral Association (Association) was formed in 1924, financed apparently through miners' wage deductions and contributions from the local unions. This association then provided low-cost funerals to members and their families. While in operation, the local unions loaned money to the Association: (1) Local No. 34 loaned it $1,648 on January 1, 1956; and (2) Local No. 1 loaned it $20,250 on January 1, 1958.

In 1956, the Association passed a resolution ordering its trustees, board members, and officers to convey four-fifths of its property to Local No. 1 and the remaining one-fifth of its property to Local No. 34. Local Nos. 1 and 34 passed a resolution instructing their delegates to vote to transfer title to the property to them. The resolution indicated the locals "wishe[d] to [perpetuate] the ownership of the *** Association in Local unions No. 1 and No. 34 *** in order that said ownership of the said *** Association *remains with the miners who have made [it]* possible." (Emphasis added.) The Association transferred its four-fifths interest to Local No. 1 and its one-fifth interest to Local No. 34 by warranty deed dated July 24, 1956.

The Association discontinued its funeral business in July 1981. Just prior to that date, Local Nos. 1 and 34 passed resolutions which directed their delegates to transfer their respective interests in the Association property to a *bona fide* purchaser. The locals did, in fact, transfer their interests to Wesley Charles and Jeanne Kay Landers by warranty deed dated August 13, 1981. The sale of the Association's real estate and personal property netted $275,000. That sum, plus other assets of the Association, totalled approximately $450,000.

In December 1981, Local Nos. 1 and 34 passed a joint resolution "vesting" a one-third interest of the Association assets in Local No. 34 and a two-thirds interest in Local No. 1. On April 15, 1982, individual members of Local Nos. 1 and 34 filed a complaint in the circuit court of Macoupin County for declaratory judgment against the locals, the Association, and unknown owners and unknown parties (case No. 82–MR–4). The plaintiffs asked that the court declare the rights, duties, and obligations of the parties; appoint a receiver; distribute the assets as follows: two-thirds to Local No. 1 and one-third to Local No. 34; and have an accounting performed with regard to the receipts and disbursements of the Association.

The law firm of McGrady and McGrady filed an answer on behalf of over 200 designated persons claiming to be unknown owners of the proceeds in issue and on behalf of all other unknown owners requesting the plaintiffs be put to proof as to the propriety of the disposition proposed. Several of plaintiffs here were among those 200 persons. Later, the court entered orders which designated plaintiffs and defendants as classes and then determined Local Nos. 1 and 34 were subclasses of the class of defendants.

On August 31, 1984, after notice to all interested parties, the court entered a judgment in case No. 82–MR–4 approving a settlement in regard to the unions' claims to the proceeds of the sale of the Association's assets. The decretal portion of the judgment was prefaced by the

following recital:

> "[T]he following proposed settlement is being presented to this Court by all parties and their attorneys with McGrady and McGrady being attorney for Unknown Owners and Unknown Parties and advising the Court that they have been in contact with a reasonable number of individuals who are or may be in the class certified by the Court as Unknown Owners and Unknown Parties and verily believe that there will be other parties within the Class of Unknown Owners and Unknown Parties that have not appeared of record except through the attorney of record for the Unknown Owners and Unknown Parties and the Court is advised that *it is the consensus of opinion* of those parties claiming as Unknown Owners and Unknown Parties *that a settlement should be made.*" (Emphasis added.)

The court then approved the payment of $103,000 jointly to Local Nos. 1 and 34 in full satisfaction of their claims. It also authorized payment of $20,250 to Local No. 1 and $1,648 to Local No. 34 in payment of certain promissory notes mentioned earlier. Finally, the court concluded the settlement of the unions' claims would not waive the right of a "member or former member *** to any share of the proceed[s] remaining *** relating to a claim on the [Association's] assets." The court later ordered distribution of those monies to Local Nos. 1 and 34 by the receiver who had previously been appointed.

Subsequently, in case No. 82—MR—4, the court ordered the receiver to distribute the balance of the proceeds from the Association assets in equal shares to persons deemed to have been members of the Association (or if such member was deceased, to his widow, child or children, grandchild or grandchildren). Members were defined as

> "any union member of either the United Mine Workers of America or the Progressive Mine Workers of America who was employed by the Superior Coal Company or the Little Dog Coal Company, or its predecessors or successors in office between January 1, 1924 and December 31, 1946."

Apparently, December 31, 1946, was determined to be the last day upon which union members were assessed for the operation of the Association. Some of the plaintiffs here received shares of that distribution. That case was finally concluded on February 4, 1987.

We agree with defendants that the judgment in case No. 82—MR—4 bars plaintiffs' complaint under *res judicata* principles.

■ A judgment entered in a class action is operative as to all class members represented. (Ill. Rev. Stat. 1987, ch. 110, par. 2—805; *Consolidated Distilled Products, Inc. v. Allphin* (1978), 73 Ill. 2d 19, 382

N.E.2d 217.) A judgment, as here, *in rem* is binding on unknown owners or parties where they are properly made parties to a suit, and service is obtained upon them by publication. (*Busby v. Maus* (1920), 294 Ill. 401, 128 N.E. 564.) Finally, persons who participate in an action through their attorney can be bound by the judgment entered even if not named as a formal party. *O'Neill v. De Laney* (1980), 92 Ill. App. 3d 292, 415 N.E.2d 1260.

The parties to case No. 82—MR—4 were Local Nos. 1 and 34, their individual members and a class consisting of all persons who had any interest in the proceeds of the sale of the Association assets. The instant case is brought by plaintiffs who claim an interest in a portion of the proceeds of the Association assets, the sum of approximately $103,000 which was awarded to the two locals in case No. 82—MR—4. The defendants are those locals. Thus, identity of parties is established.

■ The subject matter in case No. 82—MR—4 was the rights of the parties to the proceeds of the Association assets. Here, the subject matter is the present right of the parties to a portion of the proceeds of the Association assets, the sum of approximately $103,000 which was awarded by the court to the locals in case No. 82—MR—4. Any claims or defenses to claims concerning rights in any portion of that sum of money which could have been raised in case No. 82—MR—4 but were not raised cannot be raised in the instant case. (*In re Marriage of Dunn* (1987), 155 Ill. App. 3d 247, 508 N.E.2d 250; *Bernard Brothers, Inc. v. Deibler* (1951), 344 Ill. App. 222, 100 N.E.2d 512.) However, had a change in circumstances concerning rights to the $103,000 since the entry of judgment in case No. 82—MR—4 been shown, the judgment there would not be binding here. See generally *Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 482 N.E.2d 1085.

The thrust of plaintiffs' complaint here is that the proceeds previously awarded the locals should now be turned over to their members because the locals have become defunct. If that is a basis for entitling plaintiffs to the sum of money, it is a theory which could have been raised in case No. 82—MR—4 and cannot be raised here unless that condition did not exist at the time of judgment in that case but did exist at the time of the instant judgment. In its ruling, the circuit court here noted the record gave no indication of any such change of circumstances, and we can find none. We note the amended complaint alleges that the locals have been defunct for many years. We conclude the cause of action brought here is the same cause of action in regard to the same subject matter which was part of the decision in case No. 82—MR—4.

Because the parties, subject matter, and cause of action were all involved in case No. 82—MR—4, judgment there bars the relief sought by plaintiffs here. Although the case before the circuit court here was in an unusual posture, we also find plaintiffs' contention not to require reversal for other reasons.

As we have indicated, several days after the court allowed the defendants' motion attacking the amended complaint on the basis that the cause of action alleged was barred by the defense of *res judicata*, the plaintiffs moved for leave to replead, and the defendants moved for summary judgment on the grounds of *res judicata*. On April 18, 1988, the court entered an order denying leave to replead and granting summary judgment, all with prejudice. Plaintiffs then appealed from that order. They now contend the summary judgment was invalid because no complaint existed at that time to support the judgment. However, the dismissal of the complaint and the summary judgment were entered on exactly the same grounds and finalized in the same order. Thus, even if the summary judgment had no basis, the judgment dismissing the amended complaint with prejudice is validated by the defense of *res judicata*, which we have held to have been established. Moreover, analyzing the situation from another perspective, we note that the order of dismissal had not become final until the motion for leave to replead was denied simultaneously with the entry of the summary judgment. Whichever ruling was made first would seem to control, and each produced the same result for the same reason.

*Kubik v. CNA Financial Corp.* (1981), 96 Ill. App. 3d 715, 422 N.E.2d 1, involved somewhat similar circumstances. There, defendant filed a motion for summary judgment which included a ground that plaintiff had failed to state a cause of action. The trial court allowed the motion, finding that there was no genuine issue of material fact *and* that plaintiff's amended complaint had failed to state a cause of action. While the appellate court disapproved of the combined request, it stated no grounds for reversal would exist absent a showing of prejudice. Since the trial court had properly entered summary judgment by finding no issue of genuine fact had existed, the court concluded the additional finding that no cause of action was stated had not prejudiced plaintiff. A similar lack of prejudice is apparent here.

Next, plaintiffs contend the court erred in granting summary judgment to defendants without first declaring a class against whom the judgment applied. In *Landesman v. General Motors Corp.* (1976), 42 Ill. App. 3d 363, 356 N.E.2d 105, *vacated & cause remanded* (1978), 72 Ill. 2d 44, 377 N.E.2d 813, a complaint sought damages as a class action. The defendant moved to dismiss the case on the dual basis that

neither a cause of action nor the conditions for a class action were shown. The circuit court dismissed the complaint on the basis that grounds for a class action were not shown. Upon appeal to the appellate court, the defendant contended that, regardless of whether other grounds for a class action were shown, the failure of the complaint to state a cause of action justified the dismissal by the circuit court. The appellate court reversed and remanded, holding that the proper basis for a class action was shown and the issue of whether the complaint stated a cause of action was not before it. (*Landesman v. General Motors Corp.* (1976), 42 Ill. App. 3d 363, 356 N.E.2d 105.) The supreme court granted leave to appeal and held the existence of a cause of action was necessary for the plaintiff to bring a class action. The appellate court was reversed and the cause remanded to the circuit court with directions for that court to proceed with deciding, first, the question of whether the complaint stated a cause of action.

■■ Here, before proceeding to determine whether criteria for a class action existed, the court ruled upon the question of whether the affirmative defense of *res judicata* precluded the existence of a class action. Plaintiffs were not prejudiced by the procedure. By analogy to *Landesman*, the negation of a cause of action on plaintiffs' part because of the affirmative defense precluded them from bringing a class action on behalf of others. As no class had been certified, the judgment entered was clearly not binding on persons, other than plaintiffs, who would have been class members had such a class been certified. The judgment appealed is not erroneous because no previous ruling had been made on the request for class certification.

■■ Finally, plaintiffs maintain the court erred in denying their motion to replead. Courts have reasonable discretion in ruling upon such requests. (*Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 502 N.E.2d 1053.) Plaintiff did not present a proposed amended pleading or indicate new allegations which it could make. They did present a document entitled "brief synopsis of plaintiffs' position," but this did not indicate any new theories which could be pleaded. As no showing was made that the *res judicata* defense would not be equally applicable to any new pleading, the court was well within its discretion in denying leave to replead. *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642.

The judgment appealed is affirmed.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.